REBECCA SWETT, Appellant, v. WILLIAM LARGE.

Deed: SIGNATURE: ACKNOWLEDGMENT: IMPEACHMENT: EVIDENCE. To overcome the presumption in favor of the genuineness of a signature and certificate of acknowledgment to a deed, the proof must be clear.  Evidence considered and held insufficient.

*Appeal from Taylor District Court.*—HON. H. M. TOWNER, Judge.

WEDNESDAY, JANUARY 20, 1904.

PLAINTIFF is the widow of Cyrus Swett, and in this action prays that her dower interest in certain land be set apart to her. The petition was dismissed, and she appeals.— *Affirmed.*

*Haddock & Sons* for appellant.

*Flick & Jackson* for appellee.

LADD, J.—The forty acres in controversy was conveyed to Cyrus Swett January 30, 1866, and on March 9th of the same year he deeded it to William Large. Swett died January 5, 1892, and in this action, begun September 10, 1901, the plaintiff asks that she be declared to have a dower interest in the land, and that it be set apart for her. The purported signatures of the deed to Large and the acknowledgment are as follows:

"Cyrus Sweat.

"Rebeca Sweat.

"State of Iowa, Taylor County, ss. I, William Roberts, a Justice of the Peace of said County hereby certify that on this day personally came before me Cyrus Sweat and Rebecka Sweat, wife of said Cyrus Sweat, personally known to me to be the Identicle persons who signed the foregoing deed as grantors and acknowledge the execution thereof to be thare voluntary deed and act. And the said Rebecka Sweat relinquishes her dower therein.

"Witness my hand this 9 day of March A. D. 1866.

William Roberts,

"Justice of the Peace."

To support her claim that she had never released her dower interest in the land, plaintiff testified that she was

sixty-nine years old, and that she remembered when the land was purchased, when the defendant took possession and began improving it two or three months later; upon examining the deed, "that the name is not signed right"; that she always signed her name with two c's in Rebecca; that she did not acknowledge it before Squire Roberts. "Q. Did you ever authorize anybody else to acknowledge it before Squire Roberts? A. No, sir; I always do that myself." On cross-examination: That she knew defendant erected a valuable house on the land since her husband's death, and had not mentioned her claim to him. Q. Why didn't you tell Mr. Large that you made a claim? A. Well, I just didn't do it. A person don't have to tell everything they know." Her signature to a petition to have her dower interest in certain lands left by her husband set aside was then shown her, and she was asked, "Is that your signature?" and she answered: "Well, I can't say that it is. That is not the way I spell my name. There is no two c's in that. I always spell my name in one way, and in no other way." When her attention was called on redirect examination to the fact that there were two c's in the signature she said: "Well I don't know. I ain't sure but then I might have signed that, because the other part is all right." Again, a deed to Charles Roscoe, signed by herself and her husband, the letters of her name being entirely separated one from the other, was shown her, and she testified: "No; why don't you see that ain't wrote like I write at all. Q. You didn't sign that, did you? A. No, I don't think I ever did. If I ever did, it is more than I remember of. Now, as you are alive, I don't write that way." The petition for letters of administration of her husband's estate, signed by her, was exhibited, and she declared: "I don't remember of signing that paper. Now, them c's, you see, ain't the same. Q. What do you say as to whether that is your writing? A. Well, I don't think it is. It don't look

like it. I don't remember anything about that." She did not recollect whether she had signed an acknowledgment of service of notice of the final report of the administrator, though not denying the signature. But she did insist that the deed in question was never brought to her, and that she never signed it.

We omit her statements with respect to conversations with her deceased husband, as they are not admissible. The only corroboration offered was the testimony of a son who pretended to detail a conversation between his father and mother concerning the signature of the deed, which occurred more than thirty years previous, and when he was but fourteen years of age, and related that her failure to sign had been a topic of conversation in the family ever since. Manifestly, evidence of plaintiff's declarations in her own favor were not admissible, and all the deceased husband is shown to have said was that "the deed is already made." If this were to be construed as an assertion that the deed had been executed without her assistance, it was after he had parted with the title and retained no farther interest in the land. It could not then have been an admission against his interest, and for that reason might not be receivable in evidence.

Ought her unsupported testimony be held sufficient to overcome the presumption in favor of the certificate of acknowledgment? We think not. The memory of the witness appears to have been extremely defective. She had lived a near neighbor to Large for over thirty years without mentioning her alleged omission to sign the deed. Five or six years subsequent to her husband's death she allowed him to erect a dwelling house on the land at great expense without a suggestion of interest in it. The action was not begun until nearly nine years after her right, if any she had, accrued, although she pretended to have been aware thereof at all times. The only other witnesses to the transaction—her husband and the justice—are both

dead. In view of these circumstances we are not ready to accord her unsupported assertion greater weight than the justice's solemn certificate to the contrary. He was selected for the office because of his recognized probity, and the presumption prevails that he performed this, as well as other duties, with fidelity and care. He is shown to have been a man of integrity and good character, and the imputation of attaching a false certificate of acknowledgment ought not to be lodged against him, or that of forgery against this woman's husband, without very clear and convincing proof. *Herrick v. Musgrove*, 67 Iowa, 63. In *Borland v. Walrath*, 33 Iowa, 130, the grantor's testimony was somewhat corroborated, and her credibility was unaffected by other circumstances. The strictness of proof usually exacted in such cases to overcome acknowledgments of long standing is indicated by the expressions of opinions by many eminent courts in *Albany County Savings Bank v. McCarty*, 149 N. Y. 71 (43 N. E. Rep. 427). See, also, *N. W. Loan & Banking Co. v. Jonasen*, 11 S. D. 576 (76 N. W. Rep. 840); 1 Cyc. 560. And some decisions are to the effect that the uncorroborated denial of one's signature to a duly acknowledged instrument is insufficient to destroy its validity. *Tuschinski v. Ry. Co.*, 176 Ill. 420 (52 N. E. Rep. 920); *Gray v. Law*, 6 Idaho, 559 (57 Pac. Rep. 435). It is not, however, essential to a decision in this case to lay down such an invariable rule as to the weight to be given evidence. As remarked in *Herrick v. Musgrove, supra*; "The acknowledgment is a provision which the law makes for the security of titles and the protection of property owners from fraud and imposition." It is not to be lightly brushed aside by the testimony of a witness who is unable to recognize her own signature, and whose conduct for thirty-three years, in so far as appears, has been inconsistent with the claim that the signature to the deed was a forgery. —AFFIRMED.