REES H. PARRY, Appellee, v. OLIVE REINERTSON et al., Appellees; ELIZABETH WOODWARD, Intervener, Appellant.

No. 39496.

April 2, 1929.

Rehearing Denied June 24, 1929.

*H. W. Hanson,* for appellant.

*Bradshaw, Schenk & Fowler,* for Rees H. Parry and Brattleboro Savings Bank, appellees.

*Chester J. Eller,* for Olive Reinertson, appellee.

*E. S. Tesdell,* for R. M. Reinertson, appellee.

*L. B. Bartholomew,* for Bankers Trust Company, appellee.

Wagner, J.—On February 18, 1922, Grossman, the then owner of the real estate in controversy, entered into a written contract with the defendant R. M. Reinertson for the sale by the former to the latter of said real estate upon certain terms and conditions therein mentioned, providing for the assumption by the purchaser of two mortgages thereon and the payment of the remainder of the consideration in monthly installments. On the 1st day of the following March, a warranty deed was prepared, in which Olive Reinertson (wife of R. M. Reinertson) is named

as grantee. Said deed stipulates that three mortgages then existing as liens against the real estate are assumed by the grantee. This deed was executed by Grossman and his wife on March 20, 1922, and filed for record and recorded the same day.

Simultaneously with the preparation of the deed, an instrument which is denominated in the record "Exhibit No. 1"—and we will so speak of it in this opinion—was prepared by the scrivener. It is in form a written contract, or bond for deed, purporting to be a contract for the sale by Grossman, as party of the first part, to Olive Reinertson and R. M. Reinertson, as parties of the second part, of the same real estate. It is therein provided that the real estate is subject to the same three mortgages mentioned in the aforesaid deed. Said contract further provides that the Reinertsons are to pay to Grossman the sum of $2,477.46 in monthly installments of $50 each, and contains the following provision:

"And the said party of the first part, on receiving the full sums as above stipulated, agrees that he will execute and deliver to the said party of the second part at his own cost and expense a general warranty deed, conveying to said second party the fee simple of said premises, free from all incumbrances to the date of this contract, except as above stated (deed has been delivered) and to furnish the said second party an abstract of title to said premises showing merchantable title to the date of this contract."

All of the quoted provision is in the printed form of the instrument, except the words "as above stated (deed has been delivered)," which are typewritten. It is further stipulated in said written instrument that the party of the second part will keep the buildings now erected or hereafter to be erected upon said premises insured for the benefit of the said first party, his successors or assigns, "as long as this contract shall remain a *lien* upon said premises;" and for failure of the parties of the second part to make payments as the same become due, the party of the first part is given four options, among which is the right to proceed in equity to foreclose the contract. Said instrument, Exhibit No. 1, is not signed by Grossman. The Reinertsons, as witnesses, both admit that they signed the instrument. On the back of said Exhibit No. 1 is a written assignment by Grossman to the intervener, but said written assignment is neither dated nor ac-

knowledged. Attached to the instrument by mucilage appears a separate sheet of paper, constituting a certificate of acknowledgment of the execution of the instrument by the Reinertsons under date of March 27, 1922, by a notary public, and his seal is attached. This is the instrument under which the intervener claims an equitable mortgage for the remainder of the purchase price due from the Reinertsons to Grossman, and now claimed to belong to her by reason of Grossman's assignment. This instrument was filed for record on the 16th day of June, 1922. All of same except the assignment by Grossman to the intervener was copied in the proper record in the recorder's office.

Subsequent to the time of the filing and recording of said written instrument, the Reinertsons executed the three mortgages of the appellees. The two mortgages now held by the plaintiff and the Brattleboro Savings Bank were executed to McCutchen & Standring Company, a corporation, and assigned by it to the present owners. The mortgage or trust deed under which the Bankers Trust Company claims, was executed direct to it.

It is affirmatively shown by the record that none of the owners of the three latter instruments, or the corporation under which the plaintiff and the Brattleboro Savings Bank claim, had any actual notice of the lien now claimed by the intervener under Exhibit No. 1.

The first thing for our determination is: Did Exhibit No. 1, as between Grossman and the Reinertsons, constitute an equitable mortgage in favor of Grossman for the unpaid portion of the  purchase money? It is shown by the record that the Reinertsons have paid the intervener approximately the sum of $800 on the contract. It is well established that an agreement in writing to appropriate specific property to the discharge of a particular debt, or an instrument intended to be a mortgage, creates an equitable mortgage. The form of the instrument is not conclusive against either party. When the plain intent of the contract is shown by the instrument, aided by the surrounding facts and circumstances, equity will decree that the instrument is an equitable mortgage. In 41 Corpus Juris 293 we find the following apt language:

"Courts of equity are not governed by the same principles as

courts of law in determining whether a mortgage has been created, and generally, whenever a transaction resolves itself into a security, or an offer or attempt to pledge land as security for a debt or liability, equity will treat it as a mortgage, without regard to the form it may assume. Although the conveyance in question may lack the formal requisites of a mortgage at law, or be expressed in inapt or untechnical language, equity will look to the substance, and give effect to the intentions of the parties.''

See, also, 19 Ruling Case Law 273; *In re Assignment of Snyder*, 138 Iowa 553; *Vigars v. Hewins*, 184 Iowa 683. The plain intent of the instrument Exhibit No. 1, as interpreted by the conduct of the Reinertsons, when we take into consideration the fact that a deed was simultaneously drawn by the scrivener, was to give Grossman a lien upon the real estate for the unpaid amount of the purchase price. Without further discussion at this point, we hold that, under Exhibit No. 1, Grossman had an equitable mortgage upon the real estate, to secure the unpaid amount of the consideration, and that said claim or lien is now held by the intervener, under the unacknowledged assignment from Grossman.

The subsequent mortgagees had no actual notice of the rights of the intervener. Did they have constructive notice of said rights? If not, then the rights of the subsequent mortgagees are  superior to the rights of the intervener. At this point, it is perhaps not amiss to say that the Reinertsons, while they admit that they signed the instrument, emphatically deny that they acknowledged the execution of the same. Olive Reinertson, who obtained the title under the warranty deed, testifies as a witness that she never appeared before the notary public and acknowledged the execution of the instrument; that she does not know the party who claims to have acted as notary public; that she signed the instrument on or about the 1st of March; that she never saw the instrument from that time until it was presented to her in the court room. Her husband, R. M. Reinertson, testifies to like effect as to himself. It has been held that to overcome or successfully impeach the certificate of acknowledgment requires more than the unsupported testimony of the grantor. See *Houlihan v. Morrissey*, 270 Ill. 66 (110 N. E. 341, Ann. Cas. 1917A

364). Section 11293 of the Code of 1924 provides that the certificate (of the officer) is not conclusive evidence of the facts therein stated. In *Farmer v. Ames-Farmer Canning Co.*, 190 Iowa 1259, we said:

"Certificates of acknowledgment are entitled to great weight, and to overcome the same, the testimony must be clear and convincing."

In *Johnston v. Linder*, 168 Iowa 441, we declared:

"The law is well settled that, to impeach such a deed, the testimony must be clear, satisfactory, and convincing. It should amount to more than a preponderance in the balancing of probabilities, and should, by its completeness and reliable character, fully and clearly satisfy the court that the certificate of the notary is untrue and fraudulent."

On this proposition, see, also, *Bailey, Wood & Co. v. Landingham*, 53 Iowa 722; *Herrick v. Musgrove*, 67 Iowa 63; *Swett v. Large*, 122 Iowa 267; *Currier v. Clark*, 145 Iowa 613; *Gribben v. Clement*, 141 Iowa 144; *Roberts v. Roberts*, 176 Iowa 610.

In the instant case, the notary public was called as a witness, and was shown the certificate of acknowledgment, and stated that the signature appearing thereon was his, and that the seal thereto attached was his. There was then propounded to him the following question:

"During the time when you were acting as an officer authorized to administer oaths,—that is, a notary public,—did you ever take acknowledgments where the parties did not appear personally before you?"

Upon objection to the question, it was voluntarily withdrawn by the examining attorney, and no further testimony by the notary was given. Since Exhibit No. 1 was signed by the Reinertsons and delivered, it was valid for the purposes intended, as between them and Grossman. It is unnecessary for us to determine whether the certificate of the notary public has been successfully impeached, because, for reasons hereinafter given, we find that the appellees (mortgagees) did not have constructive notice of the rights of Grossman, now held by the intervener. Under our statutory law, no instrument affecting real estate is

 of any validity against subsequent purchasers for a valuable consideration, without notice, unless filed in the office of the recorder of the county in which the same is situated. See Section 10105 of the Code. The appellees were purchasers for a valuable consideration, as shown by the record. A mortgagee is a purchaser, within the meaning of the statutory law. Section 10115 of the Code provides:

"The recorder must indorse upon every instrument properly filed for record in his office, the day, hour, and minute of such filing, and forthwith enter in the index book the entries required to be made therein, except the book and page where the complete record will appear, and such filing and indexing *shall constitute constructive notice to all persons of the rights of the grantees conferred by such instruments.*" (The italics are ours.)

Section 10109 of the Code provides:

"The recorder must keep index books, the pages of which are so divided as to show in parallel columns:
"1.  Each grantor.
"2.  Each grantee.
"3.  The time when the instrument was filed.
"4.  The date of the instrument.
"5.  The nature of the instrument.
"6.  The book and page where the record thereof may be found.
"7.  The description of the real estate conveyed."

The index book in the recorder's office in form complied with the aforesaid section of the Code. Said contract, Exhibit No. 1, under which the appellant claims, was indexed as follows: Under the column headed "Grantor" appears the name "Grossman, Edd;" under the column "Grantee" appear the names "Reinertson, Olive and R. M.;" under the column "Date of filing" appears the following, "June 16, 1922, 2:00 P. M.;" under the column "Date of instrument" appears "Mch. 1st, 1922;" under the column "Kind of instrument" there appears "Contract and Assgmt.;" under the column "Recorded" was the following, "Book 881, page 35;" in the column "Description of property" there appears "Lot 49, Sunset Park, O. P." The question is: Did

the filing and recording of the instrument hereinbefore held to be an equitable mortgage, indexed as it was, give subsequent purchasers for value constructive notice of the lien of Grossman? It must be borne in mind that the deed from Grossman to Olive Reinertson was filed and recorded approximately three months prior to the time of the filing of Exhibit No. 1. Therefore, Olive Reinertson held the title to the property at the time of the filing of Exhibit No. 1. Exhibit No. 1 was not signed by Grossman; he was in no sense a grantor or mortgagor. Under appellant's own theory, that the instrument is an equitable mortgage, the Reinertsons were mortgagors or grantors, and Grossman the mortgagee or grantee. Grossman conveyed nothing by Exhibit No. 1. It states that "deed has been delivered." It is shown by the record that only one deed was executed. Grossman was the grantor in the deed, but not in the contract, Exhibit No. 1. It requires the filing, the recording, and proper indexing, to afford constructive notice. Without proper indexing, there is no constructive notice of the rights of the mortgagee or grantee. The grantees, as shown by the index, were the Reinertsons; while, in fact, they were the grantors. Olive Reinertson held the title, under her deed, previously recorded. The indexing gave no constructive notice of any rights under Exhibit No. 1 in Grossman. In order to have given constructive notice of his rights as a mortgagee, it would have been necessary to have been indexed from the Reinertsons to Grossman. Under the record, the intervener's rights can rise no higher than the rights of her assignor. In *James v. Newman,* 147 Iowa 574, we said:

"Speaking, however, to the merits of the legal question here proposed, we may say that constructive notice, as distinguished from actual notice, is a creation of the statute, and is available to a party only in accord with the provisions of the statute. In order to impart constructive notice to third persons of any instrument of transfer by one person to another, the statute contemplates and requires that it be properly acknowledged by the parties, and that it be filed for record and spread upon the records of the county recorder, and *that it be properly* indexed. [The italics are ours.] * * *We know of no rule of law that would justify us in dispensing with these prerequisites to constructive notice."

In *Howe v. Thayer*, 49 Iowa 154, we said: "The purchaser was not bound to look beyond the index." In *Thomas v. Desney*, 57 Iowa 58, we declared:

"It is said the plaintiff did not examine the index book, and therefore was not in fact misled. This is immaterial. He was bound by whatever appeared in said book, whether he examined it or not. He was not bound to examine it, and in such case is only chargeable with notice of what it contains."

In *Koch v. West*, 118 Iowa 468, we made the following pronouncement:

"The purchaser is not bound to look beyond the proper index for information as to conveyances, and, if the index shows none, there is no constructive notice of any."

In the case at bar, the index shows no conveyance or mortgage from the Reinertsons to Grossman. We cannot escape the conclusion that the appellees had no constructive notice of any rights in Grossman now held by the appellant. Our holding makes it unnecessary to consider the question of estoppel by deed, which has been ably argued by the respective parties.

The trial court, on intervener's petition, rendered judgment against the Reinertsons in her favor, but held that she was not entitled to a lien. In this the court was in error, for reasons hereinbefore given; but her lien under the equitable mortgage was inferior to the liens of the respective appellees (mortgagees). Since we hold that she has a lien, she has the right of redemption accorded to a subsequent mortgagee, and the decree of the lower court should be modified accordingly.

The appellant's motion to strike amendment to the abstract, which was submitted with the case, has had our consideration, and is hereby overruled.—*Modified and affirmed.*

ALBERT, C. J., and STEVENS, DE GRAFF, and MORLING, JJ., concur.