Jefferson McDaniel, Appellant, v. Farmers State Bank of Yale, Appellee.

No. 40153.

October 21, 1930.

*Guy A. Miller* and *Moore & Moore,* for appellant.

*Batschelet & Vincent, S. J. Sayers,* and *R. G. Howard,* for appellee.

Faville, J.—In and prior to the year 1920, the appellant was the owner of the quarter section of land involved in this action, and resided upon the same with his family. He had lived  upon said farm for about 25 years. At the time of the trial of this cause, in 1928, the appellant was 73 years of age. His wife died in January, 1928, at the age of 68. Five or six years before the trial, the appellant and his wife moved to

Des Moines, where he purchased a residence property. The farm was leased to tenants. At some time not definitely fixed in the record, but about the year 1920, the appellant and his wife began transacting business with a bank at Yale, which was then known as the Citizens Bank of Yale. This was a private institution, which afterward was organized as a corporation, and was transformed into the appellee bank, the business of the private bank being entirely taken over by the appellee. Appellant and his wife transacted business with the private bank, and later with the appellee. This business continued as late as April, 1927. During said time, the transactions between the appellant and his wife and the said bank were numerous. Money was borrowed from said bank at different times, and notes were given therefor, purporting to be signed by the appellant and his wife, and one, at least, by the appellant only. The evidence shows that on some occasions the money so borrowed was paid over to the appellant and his wife in cash, and in other instances, the amount of a loan was credited to an account on the books of said bank which was kept in the name of "Mr. and Mrs. J. McDaniel," and against which checks were drawn covering a large number of items, and constituting a continuous account during the year 1920, and beginning again on February 2, 1925, and running until April 29, 1927. This account consisted of numerous loans made by the bank, credit for which was carried to the account of said parties as a deposit, and on one or two occasions, a direct deposit was made in said account as the proceeds of some other item.

Prior to March 9, 1926, there was an outstanding mortgage upon said farm to the Prudential Insurance Company, securing a note in the principal sum of $7,000. Negotiations were entered into between appellant and his wife and the appellee bank with regard to the procuring of a new loan with which to pay off the said mortgage to the Prudential Insurance Company. This finally resulted in the execution of a $12,000 mortgage running to the Bankers Life Company of Des Moines, which purports to have been executed on the 9th day of March, 1926, and acknowledged by appellant and his wife. This mortgage the appellant claims is a forgery, and his action brought to cancel said mortgage on that ground is now pending in this court. The records of the appellee bank show that the said amount of

$12,000 procured by said loan was credited in the open account in said bank, and remittance was made, paying off said $7,000 mortgage to the Prudential Life Insurance Company, and interest thereon. The balance of the $12,000 was absorbed by the payment of recording fees, taxes, the commission on the loan of $120, and certain other items, and certain notes which said bank then held against McDaniel and his wife, aggregating, with interest, $4,922.35. When these notes were finally charged off, it left a deficiency of $685.42 due to the bank, which was represented by a new note. This note balanced the indebtedness in said account, but thereafter, further sums were borrowed, part of which were credited in the said open account at the bank, and as to others, we gather from the record, the money was paid directly to appellant or his wife. In any event, the evidence shows that, on or about November 22, 1926, the appellee bank refused to extend further credit until it was secured for the amount owed by appellant and his wife to the said bank; and on said last-named date, the mortgage in controversy in this action purports to have been executed by the appellant and his wife. The mortgage is made subject to the first mortgage of $12,000 given to the Bankers Life Company of Des Moines.

It is appellant's contention that his signature to the said mortgage and the note secured thereby is a forgery. The burden rested upon the appellant to establish his claim of forgery of said instrument. There is no other conclusion possible, under the record, than that it is the contention of the appellant that said forgery was committed by his wife. He attempts no other explanation. The claim of the appellant is that he knew nothing of said mortgage, and personally received none of the money represented thereby. The record of the bank books shows fully the account between the appellant and his wife and said bank, and in a very large number of instances, the names of the payees to whom the checks drawn on said account were issued. The original checks were returned to the drawers by the bank as vouchers, and were not produced upon the trial; but the record satisfactorily shows that the money represented by the said mortgage was fully accounted for by the bank. Appellant professes entire ignorance of the manner in which said money was drawn or expended, and denies any knowledge of the existence of said

mortgage until a long time after it had been executed, and shortly before the death of his wife.

The ultimate question in the case at this point is whether or not the appellant has sustained the burden resting upon him to prove that the signature to said note and mortgage of $1,750 held by the appellee is a forgery. The mortgage purports to have been acknowledged in the usual manner before a notary public, and the usual certificate of acknowledgment, with the signature of the notary and the notarial seal, is attached to the instrument. The appellant himself does not specifically deny that he acknowledged the instrument. He merely denies that the signature thereto is his genuine signature. However, the notary, as a witness in behalf of the appellant, testified that the signature to the acknowledgment was the notary's signature, but that the recital of the certificate was false, in that the appellant did not appear before him and acknowledge said instrument, and never did so acknowledge it in any manner. He contended that Mrs. McDaniel brought the signed instrument to his office, and that he falsified the certificate of acknowledgment.

The statute of this state provides that, if any notary appends his official signature to an acknowledgment of documents when the parties have not appeared before him, he shall be  fined, and removed from office by the governor. (Section 1206, Code, 1924.) Under the facts of this case, we cannot give the testimony of the notary much weight. The solemn certificate of a notary public, attesting to an acknowledgment, upon which the rights of third parties depend, ought not to be easily set aside upon the oral testimony of the officer that he falsified said certificate. See *Parry v. Reinertson,* 208 Iowa 739, and cases cited.

No experts on the subject of handwriting were offered by either party. We regard this as unfortunate. In this case, certain of the original exhibits and photostatic copies of others have been certified to this court, and we have made careful examination of the same. There is at least one standard admitted by the appellant as being his genuine signature. Certain other standards written by the appellant have been lost from the record, and are not before us. The cause is triable *de novo,* and we have made such comparison as it is possible for us to make, for the

purpose of arriving at our own judgment and opinion as to the genuineness of the handwriting by reason of such comparison. (Code, Section 11278.) There are a number of other notes and mortgages which bear the purported signature of the appellant, given to different parties, which have been introduced ·as evidence in this case. In general, the appellant denies that the signatures to these instruments are his genuine signatures. Some admissions of genuineness were made by the appellant, which, however, were afterward qualified or withdrawn. His evidence in respect to said instruments impresses us as being devoid of that certainty that any man of his experience should possess in regard to the identity of his own signature. No useful purpose would be served by our recital in more minute detail of the various instruments which have been offered in evidence purporting to bear the signature of the appellant, and which he disclaims. We have examined them all with care. We are impressed with the fact that the signature of the appellant as attached to these various instruments, and covering a long period of years, has a marked similarity. If all of these instruments which purport to bear the signature of the appellant were forged by his wife, she was able, under a great variety of circumstances, to do the unusual thing of repeating a forgery many times in practically the same form. It is scarcely believable that a farm woman who, to say the least, was not a skilled penman, could, under many different circumstances, and on many different occasions, and in many different places, forge the signature of her husband in such manner that all of the forgeries would be similar to each other. No motive appears in the record why this woman should have been guilty of continuous and repeated forgeries. The money received from the bank is accounted for, with but few exceptions, where the checks were returned to appellant or his wife and the payees are not shown on the bank's books; but there is no showing that the wife was by deceit and crime attempting to secure money to which she was not entitled. She did handle the family finances to a large extent, paid interest, collected rents, and paid insurance, store bills, doctor's fees, and other matters; but it clearly appears that appellant knew that the wife attended to these matters, and acquiesced in it.

Without further discussion, we reach the conclusion, upon a careful examination of the record in this case, that the decree

of the trial court was correct in dismissing appellant's petition and entering decree of foreclosure on appellee's cross-petition.

The decree is in all respects—*Affirmed.*

MORLING, C. J., and EVANS, KINDIG, and GRIMM, JJ., concur.