[S. F. No. 14580. In Bank.—April 28, 1934.]

W. C. RICE, Respondent, v. FRANK P. TAYLOR et al., Defendants; AMERICAN SECURITIES COMPANY (a Corporation) et al., Appellants.

630

McKee, Tasheira & Wahrhaftig for Appellants.

Henry E. Monroe, as *Amicus Curiae* on Behalf of Appellants.

Charles L. James for Respondent.

PRESTON, J.—This appeal presents the single question as to whether plaintiff Rice or defendant Pacific Bond and Mortgage Company has the prior lien upon a residence lot, and improvements thereon, at 101 Cambridge Avenue, San Leandro, California. Admittedly defendant Taylor was indebted to both these parties and was the record owner of said lot.

On October 15, 1925, an encumbrance of some $4,000 existed on said property in favor of the Mercantile Trust Company, a banking corporation. On said date Taylor, who was a real estate broker and presumably versed, by both experience and observation, in the art of conveyancing and encumbrancing real and personal property, executed, with his wife, to the plaintiff, W. C. Rice, a document, on

the letter-head of "Taylor Sales Co., Importers and Jobbers, Hardware Specialties, 354 Tenth street, Oakland, California", in the words and figures following:

"For value received we promise to pay to W. C. Rice, two years from date hereof, the sum of . . . $6,250 with interest at 7% per annum. As security for the above, we pledge our equity in property at 101 Cambridge Ave., San Leandro, Cal., and the Taylor Sales Co., 350 10th St., Oakland, Cal. In the event of the decease of either party we pledge our estate for the amount. (signed) Frank P. Taylor (signed) Antionette H. Taylor." This document was acknowledged by a subscribing witness, certified by a notary public and recorded, at request of plaintiff, on December 4, 1925, in liber 1209, page 76, of official records of Alameda County.

On March 12, 1926, said Taylor and wife executed another deed of trust on said property to secure the sum of $550, owing to one M. A. Camp, and while still in this precarious financial condition, and on September 13, 1926, they applied to the Pacific Bond and Mortgage Company for a loan to refund the indebtedness shown by the two encumbrances above described, apparently without reference to the claim of plaintiff Rice. Taylor, on said date, of his own account, also applied to the Alameda County Title Insurance Company for a policy of title insurance on said property in favor of a contemplated mortgagee in the sum of $4,500. He later received from the title company a preliminary report, which contained the following: "NOTE: There appears of record in Liber 1209 of Official Records, page 76, Alameda County Records, the copy of a promissory note, dated October 15, 1925, executed by the above named vestees and payable to W. C. Rice in the sum of $6,250. Said note contains this statement, 'as security for the above we pledge our equity in the property located at No. 101 Cambridge Ave.' No opinion expressed as to the effect thereof."

Taylor failed to exhibit this report to the mortgage company and said company was not informed, but was without actual knowledge at all times herein, of the existence of said document referring to the $6,250 loan. Naturally it was in the interest of Taylor to conceal it from the loan company, for to reveal the contents of said report would

have been to impair or destroy his chance of refinancing his indebtedness. The mortgage company later agreed to make the loan and prepared two promissory notes and two deeds of trust naming itself as payee and beneficiary, the first for $4,000 and the second for $550. On September 16, 1926, it delivered these deeds of trust in escrow to said title company, along with a check, with instructions that the trust deeds, when recorded, should be and become first and second record liens respectively on said property. Said instructions also provided for the issuance of a policy of title insurance, payable to it, in the sum of $4,500, and it agreed with the title company as follows: "It is understood that your liability under the evidence of title herein referred to shall be based upon the RECORD TITLE ONLY and that you shall not be liable for secret defects of title not appearing of record, nor for forgery, nor for false personation, either as to instruments already of record or those involved in this escrow."

In January, 1930, plaintiff instituted this action to reform the above set out instrument executed to him and to have it construed as a real estate mortgage on said lot and foreclosed. Defendant mortgage company answered pleading itself to be a *bona fide* encumbrancer for value without notice. The court made all findings in favor of plaintiff, reforming the instrument and decreeing its priority and foreclosure as a real estate mortgage. This judgment provoked the present appeal. The other defendants named in the caption are without pecuniary interest in the result thereof.

For a correct understanding of some of the legal questions involved, it is necessary to further state that the recorder of Alameda County keeps but one set of numbered official books, that allowed by section 4131 of the Political Code. He also follows the "general index system" provided by the same code, section 4132, subdivision 26. The documents here in question were noted in said general grantors and grantees indices under the column marked "title", "note and pledge as security". If they constituted a real estate mortgage, the proper indexing would have been to note them under a column marked, "title", "mortgage of real property"; if considered a chattel mort-

gage, they should have been noted under a column marked, "title", "mortgage of personal property".

Appellant makes three basic contentions: (1) That it had no actual notice of said instruments; (2) that it had no constructive notice thereof because of the improper indexing, and (3) that it had no imputed knowledge thereof because the title company, that discovered the documents, was not its agent respecting the condition of title to the property.

We have been led to the conclusion that appellant is correct in all of its said contentions. The first one may be disposed of without further comment as no satisfactory evidence is found in the record to show that appellant at any time prior to taking said encumbrance had actual notice of the existence of said instruments.

■ Secondly, a conveyance, to impart constructive notice to subsequent purchasers or mortgagees, must be acknowledged, certified and recorded as prescribed by law. (Civil Code, section 1213.) In *Cady* v. *Purser*, 131 Cal. 552, 555, 556 [63 Pac. 844, 82 Am. St. Rep. 391], it was held that a compliance with section 1170 of the Civil Code would not alone be effective against subsequent purchasers or mortgagees, but in addition section 1213 of the Civil Code must be complied with. It was further held, with respect to constructive notice: "The principle upon which the rule rests is, that as under the provisions of the recording act, if the grantee of an interest in lands would protect himself against subsequent purchasers or encumbrancers, he must give notice of his interest, and as the statute provides for constructive notice in the place of actual notice, it is incumbent upon him to comply with all the requirements prescribed for such constructive notice, one of which is the correct transcription of the instrument into the appropriate book." In that case a sheriff's deed was erroneously recorded in a book entitled "A" of "Bills of Sale and Agreements", and it was held that such a recordation failed to impart constructive notice of subsequent encumbrancers or mortgagees. This ruling was modified by statute to hold that notice was imputed if the instrument was properly indexed as required by statute (Pol. Code, sec. 4135a). See, also, *Central Pac. R. Co.* v. *Droge*, 171 Cal. 32 [151 Pac. 663]. California may, therefore, be

classed as one of those states which has an "index system of recording". See *Ludy* v. *Zumwalt*, 85 Cal. App. 119 [259 Pac. 52].

In *James* v. *Newman*, 147 Iowa, 574 [126 N. W. 781], it was said: "In order to impart constructive notice to third persons of any instrument of transfer by one person to another, the statute contemplates and requires that it be properly acknowledged by the parties, and that it be filed for record and spread upon the records by the county recorder, and that it be properly indexed. . . . We know of no rule of law that would justify us in dispensing with these prerequisites to constructive notice." Other states, in addition to Iowa, holding similarly are Wisconsin, Washington, Pennsylvania and North Carolina. See note to the case of *Parry* v. *Reinertson*, 208 Iowa, 739 [224 N. W. 489], found in 63 A. L. R. 1051, note, pages 1057–1066.

■ The indexing of the instrument here involved as a "note and pledge as security" did not impart to subsequent encumbrancers constructive notice of a real estate encumbrance.

In *Koch* v. *West*, 118 Iowa, 468 [92 N. W. 663, 96 Am. St. Rep. 394], it was said: "The purchaser is not bound to look beyond the proper index for information as to conveyances, and, if the index shows none, there is no constructive notice of any."

Here a reading of the index alone would not even suggest a real estate encumbrance but, on the contrary, a transaction respecting chattels would come to the mind. While the word "pledge" may in certain connections be loosely used to denote a real estate encumbrance as well as one of chattels, still, where standing alone as a subject without qualifying surroundings, we cannot see how it can be said that real estate is even hinted at. If the index is to be held material at all it must give some direct reference to the true nature of the instrument referred to. Respondent admits if "a title so shows that its character is such that it would be unreasonable to suppose it might affect the property under search", the indexing is insufficient. We believe this to be just such a case.

We have deemed it unnecessary to discuss the legal effect of the instrument itself to charge one with actual notice of its contents, with knowledge that it affected real property.

This, we believe, is a serious question, but we shall not pause to decide it.

Lastly, assuming the instrument to be one encumbrancing real property at the street address given, was knowledge of the contents thereof by the title company, imputed to the mortgage company, when it agreed to accept the policy of insurance and complete the loan? It is to be here noted that Taylor, the record owner of the property, secured the search applied for and presumably paid the insurance premium. The extent of the special authority conferred upon the title company by the mortgage company was to complete the exchange of documents necessary to consummate the transaction, all conditioned upon its writing the policy insuring the title with the new deeds of trust as first and second liens respectively. Was the title company, in tendering the policy of insurance, acting as the agent of the mortgage company in the matter of the title to this property?

Admittedly, were the title company a mere searcher of titles, with accompanying duty to report its findings to its employer, the relation of agent and principal would be established; the same would be true were the relation that of attorney and client. (*Bogart* v. *George K. Porter Co.*, 193 Cal. 197 [223 Pac. 959, 31 A. L. R. 1045]; *Rauer* v. *Hertweck*, 175 Cal. 278 [165 Pac. 946]; *Mabb* v. *Stewart*, 147 Cal. 413 [81 Pac. 1073]; *Wittenbrock* v. *Parker*, 102 Cal. 93 [36 Pac. 374, 41 Am. St. Rep. 172, 24 L. R. A. 197].) The liability of the searcher or of an attorney would be for negligence and not as an insurer or guarantor. Title insurance is quite a different contract to that of the abstractor of titles. Our Civil Code, section 453c, defines a policy of title insurance as follows: "Any written contract or instrument purporting to show the title to real property, or furnish information relative thereto, which shall in express terms purport to insure or guarantee such title or the correctness of such information, shall be deemed a policy of title insurance." Such contract contains no elements of agency but is the indemnity agreement of an independent contractor.

To write title insurance the company must conform to the specifications required by law and in general submit to the same supervision as other insurance companies. The

nature of the title insurance contract is discussed in the case of *Title Ins. & Tr. Co.* v. *Los Angeles*, 61 Cal. App. 232, 235 [214 Pac. 667], as follows: "Title insurance had become a recognized form of insurance in California and elsewhere prior to the year 1910, although it is more modern in its origin than are many other branches of insurance business. It has been defined as an agreement whereby the insurer, for a valuable consideration, agrees to indemnify the insured in a specific amount against loss through defects of title to real estate, wherein the latter has an interest, either as purchaser or otherwise. (38 Cyc. 344.) Generally, in other kinds of insurance, the policy protects the assured against matters that may arise during, and only during, a stated period after the issuance of the policy, but the risks of title insurance, although they may be referable to the contingency of future loss, are only designed to save the assured harmless from loss through defects, liens, and encumbrances that may affect or burden the title at the time when the certificate or policy is issued. There is no implied agreement to go beyond the conditions existing at the time the policy is issued and to assume·a general liability to indemnify against future encumbrances. (38 Cyc. 349, 350.) But the distinction thus existing does not deprive title insurance of any of the essential elements which characterize the contract of insurance." See Cooley's Briefs on Insurance, vol. 1, pp. 21, 324.

The insured and the insurer deal at arm's length. There is no room for the operation of a fiduciary relationship. The title company is in business for profit. It may be willing to assume risks that the insured might think imprudent. The duty to report its findings as to the nature of the title of the property involved to him is nowhere enjoined. The fact that the company often reports its findings preliminarily to him is not evidence that it is compelled to do so. The wisdom of doing this, except in cases where the insurer demands the correction of defects of title before · issuing its policy, is not apparent. Under such a hypothesis, it could be said that in every insurance transaction of whatsoever type, the insurer is the agent of the insured. Much more reasonable would be a holding the reverse of this contention. Although the question did not receive extended consideration, nevertheless, in the case of *Mayhew* v. *Melby*,

206 Cal. 396, 400 [274 Pac. 517], we used the following language:

"Defendants also contend that the judgment should be reversed for the refusal of the court below to admit in evidence a policy of title insurance . . . issued to plaintiff, which stated that her title was subject to the Melby contract. But said policy could not have been received by her until after her deed had been recorded. Said title insurance company was not the agent of plaintiff, and any knowledge it may have possessed as to the condition of the title was not imputable to plaintiff."

Moreover, if an agency was here conferred upon the title company, it was to search only for matters properly of record, as noted in the above quotation from the escrow agreement. (*Bothin* v. *California T. I. Co.*, 153 Cal. 718, 722 [96 Pac. 500, Ann. Cas. 1914D, 634].) Anything learned about matters not affecting the record title would not in any event be imputed to the principal. If the instrument in question was not properly of record, the title company on its own account, or as agent, had no duty to perform respecting it. As said in the case of *Bogart* v. *George K. Porter Co.*, 193 Cal. 197, 210 [223 Pac. 959, 31 A. L. R. 1045]: "The rule invoked by counsel is subject to the qualification that 'knowledge *possessed* by an agent while he occupies that relation and is executing the authority conferred upon him as to matters within the scope of his authority, is notice to his principal, *although such knowledge may have been acquired before the agency was created,* if it appears that such knowledge was present in his mind at the time he acted for the principal'." See, also, *Cooke* v. *Mesmer*, 164 Cal. 332 [128 Pac. 917]; *Christie* v. *Sherwood*, 113 Cal. 526 [45 Pac. 820].

The findings to the effect that the document was properly recorded and that defendant mortgage company had knowledge of its contents are therefore unsupported by the evidence.

The judgment is reversed and the cause is remanded for further proceedings within the limits here imposed.

Curtis, J., Shenk, J., and Waste, C. J., concurred.