63 N.J. Super. 356 (1960)
164 A.2d 620
JACK E. COLEGROVE, ET ALS., PLAINTIFFS-RESPONDENTS,
v.
ELEANOR BEHRLE, ET ALS., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 1960.
Decided October 17, 1960.
*359 Before Judges GOLDMANN, FREUND and KILKENNY.
Mr. William B. Hutchinson, Jr., argued the cause for defendants-appellants (Messrs. Lewis, Hutchinson and Miller, attorneys for Joseph A. O'Brien, and Irene C. O'Brien, his wife; Mr. Ephraim Tomlinson, II, attorney for Fidelity Mutual Savings and Loan Association).
Mr. Robert E. Gladden argued the cause for plaintiffs-respondents (Messrs. Ross and Gladden, attorneys).
The opinion of the court was delivered by FREUND, J.A.D.
Defendants, Joseph A. O'Brien, Irene C. O'Brien, his wife, and Fidelity Mutual Savings and Loan *360 Association, appeal from a judgment entered in the Chancery Division, impressing an equitable lien upon certain lands located in Medford, N.J., to secure the payment of $3,341.14 awarded to the plaintiffs. The judgment is based on plaintiffs' claim that defendants had notice of a prior trust agreement between the plaintiffs and Clifton Builders, the latter having conveyed the premises, through a nominee, to the defendants Joseph A. O'Brien and his wife.
The plaintiffs, Jack E. Colegrove and Carolyn H. Colegrove, his wife, originally owned the lands in suit. They contracted with Ashton Builders for the construction of a dwelling on the land, but prior to the completion of the building, Ashton defaulted. Clifton Builders Supply Co. (Clifton), a subcontractor and creditor of Ashton for materials furnished, agreed to complete the building in accordance with the Colegrove-Ashton contract, if the Colegroves would convey the premises to Clifton. The parties agreed that Clifton would complete the building and offer the property for sale, and the proceeds would be disbursed as follows: (1) Clifton would be reimbursed for the cost of completing the building in accordance with the Colegrove-Ashton contract; (2) the Colegroves would be returned their investment in the property, namely, the original purchase price of $2,000 for the land, and $1,000 they had paid to Ashton; and (3) Clifton would receive the balance due to it for materials previously supplied to Ashton.
In accordance with the arrangement, the Colegroves, on April 8, 1958, conveyed the property to defendant Eleanor Behrle, the nominee acting for Clifton. The deed was forwarded by the attorney for the Colegroves to the attorneys for Clifton with an accompanying letter of April 9, 1958 which incorporated the trust arrangement. The deed from the plaintiffs was recorded, but it contained no mention of the agreement upon which the conveyance was made.
In early December 1958, defendants Joseph O'Brien and his wife agreed to purchase the property from Eleanor Behrle. The Fidelity Mutual Savings and Loan Association (Fidelity) *361 consented to lend the O'Briens $5,000 on a purchase money mortgage. The entire transaction was placed in the hands of the Lawyers Title Insurance Corporation (Lawyers Title), in Camden, which was to examine the title, record the documents, receive the mortgage money and the balance of the purchase price, make distribution of the proceeds, and issue a title insurance policy to the mortgagee. The closing took place on December 11, 1958 at the office of Lawyers Title, at which time the mortgage money and the balance of the purchase price were placed in the hands of Lawyers Title by the O'Briens and Fidelity.
On the following morning, December 12  prior to the recording of the deed and mortgage and disbursement of the funds  Henry Ross, the attorney for the Colegroves, had occasion to be at the Lawyers Title offices on another matter. A settlement clerk employed there, Miss Cooney, inquired of him about the failure of the Colegroves to obtain a return of their money in the Medford property. She was aware of the Colegroves' interest because of her personal friendship with them. Miss Cooney stated that a settlement had been made of the property, but the documents had not been recorded nor had the money been disbursed. Immediately, Mr. Ross approached Mr. Woodward, the manager of Lawyers Title, and showed him the letter of April 9, 1958, addressed to the attorneys for Clifton and Behrle and incorporating the Colegrove-Clifton trust agreement. The manager refused to disclose the names of the purchasers and mortgagee of the property. He made no effort to delay the disbursement of the proceeds or to inquire into the validity of the asserted claim. He did not notify the O'Briens or Fidelity of the information which had come to him relative to the trust agreement. Instead, the deed and mortgage were recorded at the county clerk's office three days later, on December 15, 1958, and the settlement funds were disbursed. The trust agreement was first brought to the attention of the O'Briens and Fidelity when they were served with the summons and complaint in this action.
*362 The trial court found that a valid trust existed, and that although a written memorandum of the trust was not recorded, the O'Briens and Fidelity were charged with notice of the trust prior to the recording of the deed and mortgage and the distribution of the moneys, by reason of the notice to the manager of Lawyers Title, which was held to be an agent of the O'Briens and Fidelity.
Defendants contend that Lawyers Title was acting in the capacity of an independent contractor, that it merely undertook to insure the mortgagee, and that notice of the unrecorded alleged trust agreement cannot be imputed to the O'Briens and Fidelity; and that the alleged trust agreement, being unrecorded, is unenforceable because the writing was not signed by either the settlor or the trustee in conformity with the statute of frauds, R.S. 25:1-3. It is also urged that since Clifton was not served personally with process, its obligations could not be adjudicated. In defendants' reply brief, they also claim that the failure of plaintiffs to introduce the alleged trust agreement and the reply letter formally into evidence resulted in failure to prove and establish a valid claim.

I.
The initial question is whether Lawyers Title was, as defendants claim, an independent contractor whose function was limited to examination of the public records and issuance of a title insurance policy, and whose awareness of plaintiffs' claim was not imputable to the O'Briens and Fidelity. Plaintiffs contend that Lawyers Title was more than a mere insurer of the title and was, in fact, an agent who received notice, imputable to its principals, of plaintiffs' interest before recording the documents and disbursing the moneys in its hands.
The determination of the status of Lawyers Title depends essentially upon the facts. The trial court found that the "Lawyers Title Insurance Company at the time of making *363 settlement were acting as agent for the buyers and the agent for the mortgagee." In support of this finding by the court, the evidence disclosed that Lawyers Title was engaged to do more than issue a title insurance policy to the mortgagee.
The defendants rely upon Rice v. Taylor, 220 Cal. 629, 32 P.2d 381 (Sup. Ct. 1934), in support of their contention that Lawyers Title was an independent contractor rather than an agent. The factual background presented in Rice may be reviewed briefly. The property in question was already encumbered in the amount of $4,000 when defendants Taylor and his wife executed a note for $6,250 to the plaintiff Rice pledging their land as security. Later, Taylor and his wife executed a deed of trust on the property to secure a debt of $550 owing to another party. In an effort to refund the indebtedness of the last two encumbrances, the Taylors applied to a mortgage company for a loan, without referring to Rice's claim. Defendant Taylor also applied for a policy of title insurance in favor of the contemplated mortgagee. The preliminary report of the title company disclosed the promissory note executed to Rice, with the property pledged as collateral security. Neither defendants nor the title company exhibited the report to the mortgage company, which at all times was without actual knowledge of the existence of the Rice note for $6,250. The mortgage company agreed to make the loan and delivered two trust deeds in escrow to the title company with a check, requesting that the deeds be recorded as first and second liens, respectively. Since the mortgage company had agreed to limit the title insurer's liability to defects in the "record title only," the court held that as the promissory note to Rice was improperly indexed, the defect was not based upon the "record title" and did not bind the title company within the terms of its agreement. The court went on, however, to discuss Rice's contention that the title company was agent for the mortgage company and that the actual notice of the former must be imputed to the latter. A distinction was made between a title insurer, who has no duty to report *364 defects in title, and one engaged to examine the title for the owner or mortgagee. Said the court, at 220 Cal., page 635, 32 P.2d, at page 383:
"Admittedly, were the title company a mere searcher of titles, with accompanying duty to report its findings to its employer, the relation of agent and principal would be established; the same would be true were the relation that of attorney and client."
The difficulty in applying the Rice case to dispose of the instant problem is that here Lawyers Title assumed charge of the entire transaction as insurer of the title, adjuster at the closing, receiver and disburser of the purchase moneys, examiner of the title between the date of closing and date of recordation, and recorder of the deed and mortgage. Reference to the settlement sheet prepared by the title insurer indicates that defendants were billed for all of these responsibilities.
Thus the title company performed more than the purely ministerial functions of insuring the title and recording the instruments. Whether its activities were equivalent to those of an attorney is not at issue here. But we note that it has been held unequivocally that knowledge on the part of the attorney for a purchaser of land, or a judgment creditor, of a defect in title is imputed to the client. Dickerson v. Bowers, 42 N.J. Eq. 295 (Ch. 1886); cf. Van Dyke v. Carol Building Co., 36 N.J. Super. 281, 285 (App. Div. 1955). Moreover, in New Jersey State Bar Association v. Northern New Jersey Mortgage Associates, 32 N.J. 430, 445 (1960), a proceeding to restrain a title company from engaging in acts constituting the unauthorized practice of law under N.J.S. 2A:170-78 et seq., it was stated that a title company's legitimate authorized functions should be limited to the insuring of titles, the causing of searches and abstracts to be made, and the sending of a legal representative to protect its interests at title closings. The court cited with apparent approval Title Guaranty Company v. Denver Bar Association, 135 Colo. 423, 312 P.2d *365 1011 (1957), in which a title company was enjoined from performing a "closing" or "escrow" service consisting of the preparation of various closing instruments and the providing of rooms for closing, for which a fee was collected.
In the instant case, we note that the settlement sheet contains the following items and charges pertaining to Lawyers Title's status: "Services in making settlement * * *" and "L.T.I.C. distribution fee." Also on the end of the settlement sheet is an authorization to Lawyers Title to "record all papers prior to distribution of funds." In the light of these facts, it is clear that the functions of Lawyers Title are clearly distinguishable from those of the title insurer in Rice v. Taylor, supra.
Even if it could be said that before the closing, Lawyers Title was acting as a mere independent contractor in undertaking the risk of insuring the title, the added duties assumed at the time of closing clearly gave it the added responsibility of an escrow agent. An escrow agreement imports a legal obligation on the part of the depositary to retain the money or documents until the performance of a condition or the happening of an event, at which time the money or documents are to be delivered in accordance with the terms of the agreement. Dooley v. Kushin, 105 N.J.L. 595, 598 (E. & A. 1929); Levin v. Nedelman, 141 N.J. Eq. 23, 29 (Ch. 1947), reversed on other grounds 142 N.J. Eq. 769 (E. & A. 1948); Cooper v. Bergton, 18 N.J. Super. 272, 277 (App. Div. 1952); Mecray v. Goldman, 102 N.J. Eq. 559, 565 (Ch. 1928). The affidavit of defendant Joseph A. O'Brien, on motion for summary judgment, clearly discloses that the parties entered into an escrow arrangement, with Lawyers Title as depositary.
Thus, at and after settlement, the title company was acting in two capacities. In providing title insurance for the mortgagee, it was an independent contractor. In receiving the purchase moneys for disbursement, and the deed and mortgage for recording, it was an escrow agent or depositary. The fact that Lawyers Title as depositary was *366 to perform in accordance with the parties' directions some of the conditions necessary to the execution of the escrow does not affect its status.
A fiduciary relationship is created by and inherent in the nature of an escrow agreement. Progressive Iron Works Realty Corp. v. Eastern Milling Co., 155 Me. 16, 150 A.2d 760, 762 (Sup. Jud. Ct. 1959). It is thus understandable that the same jurisdiction which held in Rice v. Taylor, supra, that a title company is an independent contractor, has also held that the knowledge of an escrow agent may be imputed to his principals. Early v. Owens, 109 Cal. App. 489, 494, 293 P. 136 (D. Ct. App. 1930); Ryder v. Young, 9 Cal. App.2d 545, 553, 50 P.2d 495 (D. Ct. App. 1935); Thein v. Sticha, 93 Cal. App.2d 295, 298, 209 P.2d 13 (D. Ct. App. 1949). See 3 C.J.S., Agency, § 271, p. 205; 19 Am. Jur., Escrow, § 13, p. 430.
Although these cases involved notice to the escrow agent from the documents in the escrow file, it is not necessary that actual notice be derived from a written source. The information given to Mr. Woodward of Lawyers Title by plaintiffs' attorney, Mr. Ross, undoubtedly was sufficient to constitute actual notice under the principle of Schwoebel v. Storrie, 76 N.J. Eq. 466, 469 (Ch. 1909):
"When facts are brought to the knowledge of the person contemplating the purchase of the record title which are sufficient to appraise him of the existence of an outstanding claim of title, and a reasonable investigation of such facts would necessarily discover the existence of such outstanding title, the purchaser is put upon inquiry and charged with notice of the facts which a reasonably diligent inquiry would have ascertained."
It is settled that knowledge of an agent is chargeable to his principal wherever the principal, if acting for himself, would have received notice of the matters known to the agent. American Surety Co. v. Conway, 88 N.J. Eq. 370, 375 (E. & A. 1917); Heake v. Atlantic Casualty Ins. Co., 15 N.J. 475, 482 (1954). A principal's liability is affected by the knowledge of his agent if the agent had a *367 duty to supply information to the principal relevant to the matters entrusted to him. Newark Hardware & Plumbing Supply Co. v. Stove Mfrs. Co., 136 N.J.L. 401, 403 (Sup. Ct.), affirmed 137 N.J.L. 612 (E. & A. 1948); Restatement, Agency 2d, § 381, p. 182 (1958). The principal's knowledge is predicated upon the existence of a duty on the part of the agent to act in light of his knowledge. Ibid, § 272, p. 591, comment a (1958).
Lawyers Title, in the instant case, stood in a fiduciary relationship to defendants. As a fiduciary, with respect to the deed and purchase money, it had a duty, upon learning of the alleged trust before the deed was recorded and the moneys disbursed, to withhold the purchase moneys from the vendor and to notify defendants of the trust. Since a duty to disclose existed, the knowledge of Lawyers Title must be imputed to defendants.

II.
The next question is whether the alleged trust arrangement between Clifton and the Colegroves is valid, evidenced as it is solely by a letter signed by the attorney for the settlors, the Colegroves. Defendants claim that the letter was not introduced into evidence. The pretrial order provided that the trust agreement annexed to the complaint "be received in evidence without formal proof," so there can be no question that the trust agreement is in evidence.
Defendants seek to raise, for the first time on appeal, the affirmative defense of the statute of frauds, R.S. 25:1-3. This defense was not pleaded as an affirmative defense as required by R.R. 4:8-3. It was not incorporated in the pretrial order and was not raised in the trial court. They may not now raise it. The provisions of R.R. 4:8-3 are mandatory. Failure to abide by the rule amounts to waiver of the defense, as is stated by R.R. 4:12-8. Defendants rely upon McCabe v. Kupper, 4 N.J. Super. 178 (App. Div. 1949), to show that the defense of illegality need *368 not be pleaded specifically even though it is part of the affirmative defense rule. The McCabe case, however, is distinguishable and must be limited to its facts and to the particular defense of illegality there involved. See Edwards v. Wyckoff Electrical Supply Co., 42 N.J. Super. 236, 241 (App. Div. 1956), where the court said:
"In our practice of today the directions expressed in R.R. 4:8-3 should be obeyed and the requirement ought not to be relaxed except when its enforcement would in a given case be inconsistent with substantial justice."
Generally, we will not consider a defense which was not timely presented in the trial court, unless the questions raised on appeal relate to jurisdiction or to matters of great public interest. Kero v. Terminal Construction Corp., 6 N.J. 361, 372, 373 (1951); Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959). The failure to present the defense in the answer or at trial is inexcusable and it will not now be considered. Varriano v. Miller, 58 N.J. Super. 511, 519, 520 (App. Div. 1959).

III.
Defendants' final contention is that the court had no jurisdiction to adjudicate the claim of the Colegroves against Clifton, because in personam jurisdiction was essential to such adjudication, and Clifton was served only by publication as an absent defendant, pursuant to R.R. 4:4-5. Defendants confuse a genuine in personam action with an action quasi-in rem. Here, plaintiffs were proceeding nominally against defendant Clifton, but their real object was to impress an equitable lien on the Medford property. See Temple v. Clinton Trust Company, 1 N.J. 219, 226 (1948). It was out of the proceeds from the sale of that property that plaintiffs were to be paid, according to the terms of the trust. The land provided a res upon which the judgment was to operate. Solomon v. Yudkin-Krell, 2 N.J. *369 Super. 315 (Ch. Div. 1949). To adjudicate the extent of Clifton's interest in the res, service by publication was sufficient. R.R. 4:4-5.
That Clifton no longer held title to the land at the time that suit was instituted is irrelevant. Plaintiffs were claiming an equitable interest in the land, of which the O'Briens and Fidelity had imputed notice when they took title, and to which their title is subject. The court unquestionably had jurisdiction over the land and premises in question. Therefore, it could properly adjudicate the rights and interests of the various parties in the land. In so doing, it determined that plaintiffs' rights were superior to defendants' interest. The judgment operates solely against the land and not against Clifton personally.
Affirmed.