Justice SOLOMON
delivered the opinion of the Court.
Plaintiff Peter Innes and his wife, Maria Jose Carrascosa, were involved in a contentious divorce and custody battle over their daughter Victoria. During the course of their domestic relations litigation, the parties entered into an agreement whereby Carrascosa’s attorneys would hold Victoria’s United States and Spanish passports in trust to restrict travel outside of the United States with Victoria without written permission of the other party (the Agreement).[1] Nevertheless, Carrascosa’s attorneys released Victoria’s United States passport to Carrascosa, who used it to remove Victoria to Carrascosa’s native Spain, where Victoria has remained for the past ten years. By order of a Spanish court, Innes has been prevented from contacting his daughter.
Innes filed a complaint against Carrascosa’s attorneys and, following a jury trial, recovered damages for their negligence in releasing Victoria’s United States passport to Carrascosa. Innes then filed a post-trial motion to amend the judgment to award counsel fees. The trial court granted the motion, and the Appellate Division affirmed the award.
We are called upon to consider whether, in prosecuting a fiduciary malfeasance action against an attorney who intentionally violates an escrow agreement, the prevailing beneficiary may *587 recover attorneys’ fees. We refine our tightly circumscribed exception to New Jersey’s general rule against awarding counsel fees to prevailing parties and hold that, because defendants were attorneys acting in a fiduciary capacity as trustees and escrow agents for both Innes and Carrascosa, if they intentionally breached their fiduciary obligation to Innes by releasing Victoria’s United States passport to Carrascosa without Innes’ permission, defendants can be held liable for counsel fees. However, since the jury did not make a specific finding that defendants’ misconduct was intentional, we remand to the trial court, pursuant to R. 4:39-1, for a finding as to whether defendants’ breach of the Agreement was intentional.
I.
A.
Understanding the parties’ dispute over attorneys’ fees requires a review of the pertinent facts in the domestic relations litigation between Innes and Carrascosa.
Innes is a citizen of the United States and a resident of New Jersey. Carrascosa is a Spanish national and a permanent resident of New Jersey. They were married in Spain in 1999, and their only child, Victoria, was born in New Jersey in 2000. Victoria is a dual citizen of the United States and Spain.
According to Innes, the couple experienced escalating marital discord, and he ultimately moved out of the family home in May 2004. During their marital difficulties, Innes was represented by third-party defendant Peter Van Aulen, and Carrascosa by third-party defendant Mitchell A. Liebowitz.
In October 2004, Liebowitz drafted the Agreement whereby the signatories, the couple and their attorneys, agreed that Liebowitz would hold Victoria’s United States and Spanish passports in trust so as to restrict either parent from traveling with Victoria outside of the United States without the written permission of the other. Specifically, the Agreement provided, in part,
*588 [n]either ... Carrascosa nor ... Innes may travel outside the United States with Victoria ... without the written permission of the other party. To that end, Victoiia[’s] ... United States and Spanish passport [sic] shall be held, in trust by Mitchell A. Liebowitz, Esq. Victoria[’s] ... Spanish passport has been lost and not replaced, and its loss was reported to the Spanish Consulate in New York____ Carrascosa will file an application for a replacement Spanish passport within [twenty] days of today.[2]
[ (Emphasis added).]
On November 19, 2004, Carrascosa informed Liebowitz that she was terminating their attorney-client relationship and that she retained defendant Madeline Marzano-Lesnevich (Marzano-Lesnevich) of the law firm of Lesnevieh & Marzano-Lesnevich, Attorneys at Law (LML). That same day, Sarah Jacobs (then Sarah Tremml), an associate at LML, sent a letter to Liebowitz informing him of LML’s representation of Carrascosa and requesting release of Carrascosa’s file. Liebowitz responded, “[a]s you may know, I am holding her daughter’s United States passport. I would prefer if you arranged for the original file to be picked up by messenger with the messenger acknowledging receipt of the passport.” Defendant Marzano-Lesnevich received Carrascosa’s file from Liebowitz on or about December 8, 2004; it included the Agreement and Victoria’s United States passport.
In December 2004, Carrascosa obtained Victoria’s United States passport from LML, and used the passport to remove Victoria from the United States to Spain on January 13, 2005. During proceedings before the Family Part in February 2005, Innes and his then counsel discovered that Victoria left the country with her maternal grandfather.
*589 Innes filed a petition under the Hague Convention on the Civil Aspects of International Child Abduction for Victoria’s return to the United States and traveled to Spain for a hearing on the petition. The Spanish court denied the petition and ordered Victoria to remain in Spain until age eighteen. Subsequently, Carrascosa filed numerous criminal complaints against Innes in Spain, and Innes has been prevented from contacting his daughter by order of a Spanish court.
Meanwhile, the parties’ domestic relations litigation continued in New Jersey. It included a domestic violence complaint by Carrascosa which was later dismissed, and a challenge to the court’s jurisdiction. After determining that New Jersey had jurisdiction, the Family Part judge entered a judgment of divorce and granted Innes sole legal and residential custody of Victoria. The judgment gave Carrascosa ten days to bring Victoria back to the United States, but Carrascosa failed to comply with the order.[3] Innes testified that he last saw Victoria in the fall of 2005 when he was in Spain for legal proceedings, and that, because of the notoriety of the ease in the Spanish media as well as the criminal complaints filed against him by Carrascosa, he feared incarceration if he returned to Spain to visit his daughter. Innes maintains that Carrascosa’s family, with whom Victoria resides in Spain, has rejected his efforts to contact his daughter for the past ten years, and that they have refused to accept phone calls or Christmas and birthday presents he sends to Victoria.
B.
In October 2007, Innes filed a complaint in the Law Division against defendants alleging, in part, that they improperly released *590 Victoria’s United States passport to Carrascosa and intentionally interfered with the Agreement. Innes requested relief, including damages and attorneys’ fees.
Before trial, the court granted Van Aulen and Liebowitz’s motions for summary judgment and sua sponte severed the third-party complaint against Carrascosa. However, the trial court denied defendants’ motion for summary judgment, concluding that defendants owed a duty to Innes.[4] The court also denied defendants’ motion to exclude any claim for counsel fees.
At the conclusion of trial, the only issue submitted to the jury was whether defendants were negligent in releasing Victoria’s United States passport to Carrascosa. Innes v. Marzano-Lesnevich, 435 N.J.Super. 198, 214 n. 7, 87 A.3d 775 (App.Div.2014) (noting that, although Innes’ complaint alleged several causes of action, “ultimately the case was submitted to the jury only as to the claim that defendants breached their professional duty”). Specifically, the jury was asked to answer the following question: “Did Madeline Marzano-Lesnevich and/or the Marzano-Lesnevich law firm deviate from the standard of care applicable to lawyers regarding its treatment of the United States Passport of Victoria Innes?”[5]
The jury determined that defendants were negligent in releasing Victoria’s passport to Carrascosa and awarded damages to Innes and Victoria. The trial court denied defendants’ motion for *591 a new trial and their motion for judgment notwithstanding the verdict but granted Innes’ motion to amend the judgment for counsel fees and costs for both Innes and Victoria. Attached to the amended order for judgment was the judge’s explanation that an award of attorneys’ fees was appropriate because “the jury decided ... that the defendants deviated from the standard of care and thereby breached a duty owed to Peter and Victoria Innes when they gave Ms. Carrascosa Victoria’s passportf ]. As such, the traditional rule that warrants an award of fees in legal malpractice cases extends to the matter at bar.”
Following defendants’ appeal, the Appellate Division concluded that awarding Innes attorneys’ fees was appropriate even though no attorney-client relationship existed between Innes and defendants.[6] Id. at 244, 87 A.3d 775. In doing so, the panel concluded defendants intentionally violated the Agreement.
The attorney fee award is particularly appropriate in this case, since defendants were holding Victoria’s passport in trust and knew Innes and his attorney were relying upon the Agreement. Nevertheless, they intentionally violated the Agreement and gave the passport to Carrascosa upon her request.

[Ibid,]

We granted defendants’ petition for certification, limited to the issue of “whether the attorney-defendants can be liable for attorneys’ fees as consequential damages to a non-client under Saffer v. Willoughby, 143 N.J. 256 [670 A.2d 527] (1996).” Innes v. Marzano-Lesnevich, 220 N.J. 37, 101 A.3d 1078 (2014).
II.
Defendants, relying on Saffer, supra, and Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 771 A.2d 1194 (2001), argue fee- *592 shifting in attorney malpractice and misconduct cases is appropriate only when it arises out of an attorney-client relationship, which is not present here.
Amicus New Jersey State Bar Association (NJSBA) also contends the trial court and the Appellate Division inappropriately extended Saffer, supra, and Packard-Bamberger, supra, to a non-client’s negligence claims against attorneys. According to the NJSBA, the notion that attorneys’ fees are consequential damages would eviscerate the general rule against providing counsel fees to prevailing parties because attorneys’ fees could always be considered consequential damages.
Innes urges this Court to affirm the Appellate Division’s award of counsel fees and allow him to recover the expenses he incurred due to defendants’ misconduct. Innes argues that Saffer, supra, should be extended to situations where an attorney breaches his or her fiduciary duty to a non-client.
III.
A.
In the field of civil litigation, New Jersey courts historically follow the “American Rule,” which provides that litigants must bear the cost of their own attorneys’ fees. Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 404, 982 A.2d 420 (2009). This Court has noted that “[t]he purposes behind the American Rule are threefold: (1) unrestricted access to the courts for all persons; (2) ensuring equity by not penalizing persons for exercising their right to litigate a dispute, even if they should lose; and (3) administrative convenience.” In re Niles Trust, 176 N.J. 282, 294, 823 A.2d 1 (2003).
Indeed, our court rules evince New Jersey’s strong public policy against shifting counsel fees, id. at 293, 823 A.2d 1, and provide, “[n]o fee for legal services shall be allowed in the taxed costs or otherwise, except” in eight enumerated circumstances. R. 4:42-9(a) (permitting award of attorney’s fees in family action; out of *593 court fund; probate action; mortgage foreclosure action; tax certificate foreclosure action; action upon liability or indemnity policy of insurance; as expressly provided by rules in any action; and all cases where attorneys’ fees are permitted by statute).
This Court has “created carefully limited and closely interrelated exceptions to the American Rule that are not otherwise reflected in the text of Rule 4:42-9” and that are not provided for by statute, court rule, or contract. In re Estate of Vayda, 184 N.J. 115, 121, 875 A.2d 925 (2005). Suffer, supra, and Packard-Bamberger, supra, are part of this line of cases.
Saffer involved a fee dispute between an attorney and his former client, who filed a legal malpractice action against the former attorney. 143 N.J. at 260, 670 A.2d 527. One of the issues in Saffer was the effect a finding of malpractice should have on the fee dispute and on the former client’s damages. This Court held that “[o]rdinarily, an attorney may not collect attorney fees for services negligently performed,” and that “a negligent attorney is responsible for the reasonable legal expenses and attorney fees incurred by a former client in prosecuting the legal malpractice action.” Id. at 272, 670 A.2d 527. The Court reasoned that a client “ ‘may recover for losses which are proximately caused by the attorney’s negligence or malpractice,’ ” and that “[t]he purpose of a legal malpractice claim is ‘to put a plaintiff in as good a position as he [or she] would have been had the [attorney] kept his [or her] contract.’ ” Id. at 271, 670 A.2d 527 (quoting Lieberman v. Emp’rs Ins. of Wausau, 84 N.J. 325, 341, 419 A.2d 417 (1980)). Accordingly, the Court concluded that it is appropriate to award attorneys’ fees to a prevailing plaintiff in an attorney malpractice action because such fees are “consequential damages that are proximately related to the malpractice.” Id. at 272, 670 A.2d 527.
In Packardr-Bamberger, this Court extended Saffer to claims against attorneys for intentional misconduct. 167 N.J. at 443, 771 A.2d 1194. Packard-Bamberger involved a corporation’s attorney who intentionally withheld information and usurped a corporate opportunity. Id. at 437-38, 771 A.2d 1194. The Law Division *594 found that the attorney’s actions did not constitute legal malpractice, but it awarded attorneys’ fees to plaintiffs because it concluded that “authorization exists when an attorney commits intentional misconduct.” Id. at 439, 771 A.2d 1194. The Appellate Division disagreed, concluding that an award of attorneys’ fees was not authorized under Suffer because the malpractice claim was dismissed. Id. at 442, 771 A.2d 1194.
In reversing the Appellate Division, this Court held “that a successful claimant in an attorney-misconduct case may recover reasonable counsel fees incurred in prosecuting that action.” Id. at 443, 771 A.2d 1194.
Stated plainly, an attorney who intentionally violates the duty of loyalty owed to a client commits a more egregious offense than one who negligently breaches the duty of care. A client’s claim concerning the defendant-attorney’s breach of a fiduciary duty may arise in the legal malpractice context. Nonetheless, if it does not and is instead prosecuted as an independent tort, a claimant is entitled to recover attorneys’ fees so long as the claimant proves that the attorney’s breach arose from the attorney-client relationship.
[Ibid, (emphasis added).]
Notably, the Court found that fee-shifting is appropriate in misconduct cases involving an attorney-client relationship, even though the misconduct did not constitute legal malpractice.
We emphasize that a plaintiff must demonstrate the existence of an attorney-client relationship as a prerequisite to recovery. Such a requirement is consistent with the goal in Saffer of holding attorneys responsible for professional conduct that causes injury to their clients. It is likewise consistent with the policy, also suggested in Saffer, that a client should be able to recover for losses proximately caused by the attorney’s improper performance of legal services. That policy is intended to assure that the client be placed in as good a position as if the attorney had performed properly.
[Ibid, (emphasis added).]
The Court also noted that the defendant, in his dual roles as corporate director and corporate attorney, owed fiduciary duties to the plaintiff and concluded that “[bjecause [defendant] violated the duty he owed to [the plaintiff] as legal counsel, the trial court’s award of attorneys’ fees was proper.” Ibid.
*595 B.
Other fee-shifting eases decided by this Court discuss the underpinnings of Saffer and Packardr-Bamberger and conclude that counsel fees are appropriate in cases of breach of a fiduciary duty. For example, In re Estate of Lash recognized an exception to the American Rule in a case involving an estate administrator malfeasance claim covered by the terms of a surety bond. 169 N.J. 20, 35, 776 A.2d 765 (2001). In that case, the administrator of an estate breached his fiduciary duty by misappropriating estate funds. Id. at 24, 776 A.2d 765. When the estate could not recover from the administrator, the estate filed a complaint against Fireman’s Fund Insurance Company (Fireman’s Fund), which issued a surety bond on the estate. Id. at 25, 776 A.2d 765. The question in Lash was whether the estate could recoup from the surety on the bond, Fireman’s Fund, counsel fees incurred in proceedings to recover the misappropriated monies. Id. at 23, 776 A.2d 765.
A majority of this Court held that the attorneys’ fees incurred by the estate in its action on the surety bond should be assessed against Fireman’s Fund. Id. at 35, 776 A.2d 765. The Court reasoned that “under principles of suretyship, [Fireman’s Fund] is liable for the full extent of the damages caused by [the administrator] ... including the attorneys’ fees incurred in the proceeding on the bond.” Id. at 28-29, 776 A.2d 765. We also noted that this conclusion did not conflict with the American Rule or Rule 4:42-9 because neither prohibits an award of counsel fees incurred in litigation with a third party (Fireman’s Fund), when that litigation flows from the commission of a tort. Id. at 31-32, 776 A.2d 765; see also Pressler & Verniero, Current N.J. Court Rules, comment 2.9 on R. 4:42-9 (2015) (explaining attorney’s fees permitted when incurred in prosecution or defense of action caused by third party’s tortious conduct).
We explained that Lash was distinguishable from, and thus not an extension of, Saffer and Packardr-Bamberger because the holdings in Saffer and Packardr-Bamberger depended upon the attorney-client relationship.
*596 Those cases authorize an award of attorneys’ fees against an attorney-defendant when those fees were incurred as a result of the litigation to establish the attorney-defendant’s liability. Such an award is directly contrary to the American Rule’s prohibition, but was authorized in those cases due to the significance of the attorney-client relationship.
[Lash, supra, 169 N.J. at 33, 776 A.2d 765 (emphasis added).]
The Court explained that, under Saffer, the plaintiffs in Lash would not have been entitled to an award of attorneys’ fees against the administrator for breach of his fiduciary duty because the breach did not occur in the context of an attorney-client relationship.
[T]he estate may not have been entitled to an award of fees based simply on the fact that [the administrator] owed the estate a fiduciary duty. Packardr-Bamberger makes clear that the fact that a person owes another a fiduciary duty, in and of itself, does not justify an award of fees unless the mvngful conduct arose out of an attorney-client relationship.
[Id. at 33-34, 776 A.2d 765 (emphasis added).]
Following Lash, a majority of this Court decided Niles Trust and awarded counsel fees to a prevailing party where defendant, an estate executor and trustee, was not an attorney. 176 N.J. at 300, 823 A.2d 1. The Court held that “when an executor or trustee commits the pernicious tort of undue influence, an exception to the American Rule is created that permits the estate to be made whole by an assessment of all reasonable counsel fees against the fiduciary that were incurred by the estate.” Id. at 298-99, 823 A.2d 1. We noted that “[a] fiduciary relationship exists between a trustee and the trust similar to the attorney-client relationship,” and that “[b]oth the attorney and a trustee act as officers of the court when acting on behalf of clients and beneficiaries.” Id. at 297, 823 A.2d 1. The Court concluded that the defendant’s “non-attorney” status should not prevent an award of attorneys’ fees in suits against trustees for undue influence.
Undue influence committed by an executor or trustee to obtain a significant financial benefit for himself is especially pernicious regardless of whether the fiduciary is an attorney. Undue influence by an attorney who becomes executor-beneficiary under a will, and undue influence by a non-attorney who becomes trustee-beneficiary, should be treated the same regarding the payment of counsel fees required to remove the person as a fiduciary. See generally Haynes [v. First Nat. State Bank of New Jersey ], supra, 87 N.J. [163] at 177-83 [432 A.2d 890 *597 (1981)]. The only difference between the two is that the lawyer used his authorization to practice law as a license to steal and the trustee, having been named to that office, used the office to do the same. It is a difference with little meaning. In both instances, the removal proceedings are based on fraud or other intentional wrongdoing perpetrated against the settlor or testator and the beneficiaries.
[Id. at 299, 823 A.2d 1.]
Thus, Niles Trust extended the American Rule to trustee undue influence cases “based on the fiduciary’s intentional misconduct regardless of his or her professional status.” Id. at 299-300, 823 A.2d 1. The majority noted that “[t]he exception we have created directly follows from the special status of the undue influence tort.” Id. at 300, 823 A.2d 1.
This Court declined to extend Niles Trust to a case in which a “non-attorney” executor of an estate acted negligently and in bad faith in his administration of the estate, but was not found to have committed undue influence. Vayda, supra, 184 N.J. at 124, 875 A.2d 925. In declining to assess attorneys’ fees against the negligent executor, the Court reasoned that Rule 4:42 — 9(a)(3) provided the appropriate remedy by specifically allowing attorneys’ fees in probate actions to be paid from the estate. Ibid. The Court also took the occasion to reaffirm its commitment to “New Jersey’s ‘strong public policy against the shifting of attorney’s fees.’ ” Ibid, (quoting Niles Trust, supra, 176 N.J. at 293, 823 A.2d 1).
TV.
Departures from the “American Rule” are the exception. We have awarded counsel fees to a prevailing plaintiff in a legal malpractice action premised upon professional negligence because of the unique nature of the attorney-client relationship. See Saffer, supra, 143 N.J. at 272, 670 A.2d 527. We have never held that a non-client is entitled to a fee-shifting award for an attorney’s negligence. Packard-Bamberger, Lash, and Niles Trust involved fiduciaries who, by their intentional misconduct, violated their fiduciary duties and inflicted damage upon the beneficiaries.
*598 Consistent with our case law, we reaffirm that a prevailing beneficiary may be awarded counsel fees incurred to recover damages arising from an attorney’s intentional violation of a fiduciary duty. As this Court has observed, a “fiduciary’s obligations to the dependent party include a duty of loyalty and a duty to exercise reasonable skill and care.” McKelvey v. Pierce, 173 N.J. 26, 57, 800 A.2d 840 (2002) (accord Restatement (Second) of Trusts §§ 170, 174 (1959)). Accordingly, “ ‘[o]ne standing in a fiduciary relationship with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation.’ ” Niles Trust, supra, 176 N.J. at 295, 823 A.2d 1 (quoting Restatement (Second) of Torts § 874).
Here, defendants were holding Victoria’s United States passport as trustees and escrow agents. As such, they were fiduciaries for the benefit of both Carrascosa and Innes. Colegrove v. Behrle, 63 N.J.Super. 356, 366, 164 A.2d 620 (App.Div. 1960) (“A fiduciary relationship is created by and inherent in the nature of an escrow agreement.”); see also id. at 365, 164 A.2d 620 (“An escrow agreement imports a legal obligation on the part of the depository to retain the ... documents until the performance of a condition or the happening of an event, at which time the ... documents are to be delivered in accordance with the terms of the agreement.”). Innes relied on defendants to carry out their fiduciary responsibilities under the Agreement and prevent Carrascosa from taking Victoria away from him. Defendants, however, breached their fiduciary obligation to Innes and released Victoria’s United States passport to Carrascosa without Innes’ written permission. Accordingly, consistent with our post-<Sq¡(fer jurisprudence, Innes would be entitled to counsel fees if there had been a finding that defendants, as attorneys, intentionally breached their fiduciary responsibility to Innes, regardless of the existence of an attorney-client relationship.
The dissent reiterates concerns expressed in prior dissents from Lash and Niles Trust, and rails against the conclusion we reach today as further erosion of our adherence to the American Rule. *599 Yet, the dissent fails to persuasively dispute that the majority is restating and refining binding precedent — that a prevailing beneficiary may be awarded counsel fees incurred to recover damages arising from an attorney’s intentional violation of a fiduciary obligation, see Packardr-Bamberger, Lash, and Niles Trust — not expanding our prior rule.
We note, however, that the jury did not make a specific finding that defendants intentionally breached the Agreement. Innes, in his complaint, specifically pleaded that defendants intentionally interfered with the Agreement, but the trial court did not submit an interrogatory to the jury on that issue, and neither party demanded its submission. As a result, the jury’s verdict did not resolve the issue. Under these circumstances, the right to have the jury decide the issue was waived. See Campione v. Soden, 150 N.J. 163, 186, 695 A.2d 1364 (1997) (accord R. 4:39-1) (“If ... the court omits any issue of fact raised by the pleadings ..., each party waives his right to a trial by jury of the issues so omitted unless before the jury retires he demands its submission to the jury.”)
As the Appellate Division concluded, there is substantial support in the record from which to conclude that defendants’ misconduct was intentional. Nevertheless, we must remand the case to the trial court for it to decide whether defendants intentionally violated their fiduciary duty to Innes when they breached the Agreement. See Stella v. Dean Witter Reynolds, Inc., 241 N.J.Super. 55, 72, 574 A.2d 468 (App.Div.) (“Since ... there is sufficient evidence in the record to justify, but not to require, a finding of [fact in dispute], we will remand the case to the trial judge for a finding on this issue.”), certif. denied, 122 N.J. 418, 585 A.2d 412 (1990).
V.
The judgment of the Appellate Division is affirmed as modified, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

 Carrascosa’s attorney at the time the Agreement was entered into was Mitchell A. Liebowitz, Esq. He was discharged by Carrascosa, and defendants Madeline Marzano-Lesnevich, Esq., and Lesnevich & Marzano Lesnevich, Attorneys at Law, thereafter undertook the representation of Carrascosa.

 At the time the Agreement was signed, Carrascosa advised the parties that Victoria's Spanish passport had been lost. After retaining defendants, Carrascosa advised Jacobs that the Spanish passport had been stolen. When Carrascosa was deposed, however, she testified that she always had Victoria's Spanish passport and that it was never lost or stolen. Nevertheless, Thomas Kilbride, Department of Homeland Security Immigration and Customs Enforcement (ICE), testified that the ICE database shows Victoria left the country from Newark Liberty International Airport using her United States passport.

 Carrascosa was arrested in November 2006 and was indicted by a Bergen County Grand Jury on eight counts of interference with custody and one count of contempt of court. She was sentenced to a fourteen-year term of incarceration in state prison on December 23, 2009. Carrascosa was paroled from the state prison in 2014, but was transferred to the Bergen County Jail on contempt of court charges for violating the order to bring Victoria back to the United States. Carrascosa was released from Bergen County Jail on April 24, 2015.

 Defendants contended at trial and on appeal that they were not bound by the Agreement entered into by their predecessor. This contention, which is without legal or factual support, was disregarded by the Appellate Division. We note only that defendants acknowledged reading the Agreement prior to releasing Victoria's passport to Carrascosa. Therefore, defendants knew about the Agreement and the obligations it imposed upon them. See RPC 1.15(a) (duty to appropriately safeguard property of clients or third persons that is in a lawyer's possession); see also RPC 1.15(b) (duty to promptly notify the client or third person after receiving property in which a client or third person has an interest).

 The jury was also given questions regarding proximate cause and monetary compensation.

 Although the Appellate Division affirmed all aspects of the judgment with respect to Innes, the panel reversed all parts of the judgment pertaining to Victoria, including the award of counsel fees. Innes, supra, 435 N.J.Super. at 248, 87 A.3d 775. The panel reversed the award of damages for Victoria because there was insufficient evidence of the purported emotional damages and reversed her award of counsel fees because she was no longer a prevailing party. Id. at 241, 244, 87 A.3d 775.