NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3957-15T2

JOHN MROZ,

 Plaintiff-Respondent/
 Cross-Appellant,

v.

ETHEL HANDLER,

 Defendant-Respondent,

and

WALPACK HUNTING AND
FISHING CLUB, WALPACK
PROPERTIES, LLC,

 Defendants-Appellants/
 Cross-Respondents.

_____________________________

 Argued May 24, 2017 – Decided July 31, 2017

 Before Judges Simonelli, Gooden Brown and
 Farrington.

 On appeal from the Superior Court of New
 Jersey, Chancery Division, Morris County,
 Docket No. C-0097-15.

 Kevin P. Kovacs argued the cause for
 appellants/cross-respondents.
 Eric A. Inglis argued the cause for
 respondent/cross-appellant (Schenck, Price,
 Smith & King, LLP, attorneys; Mr. Inglis, of
 counsel and on the briefs).

PER CURIAM

 Walpack Hunting and Fishing Club (WHFC) and Walpack

Properties, LLC, (Walpack), (collectively defendants), appeal from

several Chancery Division orders. Defendants appeal from the May

13, 2016 order granting plaintiff, John Mroz's, motion for summary

judgment and the April 7, 2016 and December 7, 2015 orders denying

defendants' motions for summary judgment. Plaintiff cross-appeals

from the May 13, 2016 order denying his application for counsel

fees. We affirm the trial court's orders in their entirety.

 I.

 We derive the following facts from evidence submitted by the

parties in support of, and in opposition to, the summary judgment

motions, viewed in the light most favorable to the opposing party.

Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 577 (2013)

(citing Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995)).

In October 2011, octogenarian Bernard Handler leased both the

hunting and fishing rights for his property in Walpack Township

and the use of a farmhouse on the property to WHFC for a term of

 2 A-3957-15T2
five years. WHFC was a non-profit corporation formed by Bernard's1

friend and attorney, Robert J. Benbrook, Robert's son and a mutual

friend for the express purpose of leasing the property from Bernard

and recruiting hunters to become members of their hunting club.

 Robert was responsible for drafting the lease agreement and

acted on WHFC's behalf despite having an "attorney/client

relationship" with Bernard at the time and identifying himself as

Bernard's "agent." Prior to October 2011, Bernard leased the

property to a local rod and gun club (R&GC) and decided not to

renew the lease with R&GC because "[h]e was upset with the members"

for "hunt[ing] in an area of the property designated as a

sanctuary[.]" Robert claimed Bernard "agreed to lease the property

[to WHFC] on the same terms and conditions of the existing lease

[with R&GC]" and that Bernard was to provide him with a copy of

the R&GC lease to use as a model. According to Robert, Bernard

failed to provide him with the R&GC lease and "[w]hen [Robert]

pressed him for a copy of [the] lease, [Bernard] specifically said

that [Robert] should prepare a simple straight-forward lease

without regard to that[,] incorporating the terms that [they] had

agreed to." In his cover letter accompanying the final draft of

1
 Because some of the parties share common surnames, we refer to
them by their first names for clarity and ease of reference and
intend no disrespect.

 3 A-3957-15T2
the lease, Robert "confirm[ed] [their] conversation wherein

[Bernard] and [Robert] agreed to enter into this [l]ease based on

[their] mutual friendship and trust[.]"

 WHFC's lease differed from the R&GC's draft renewal lease in

four significant ways and included terms that were extremely

beneficial to WHFC. First, WHFC's lease only required an annual

payment of $5500, whereas the R&GC lease required the club to pay

nearly double that amount. According to Robert, the higher R&GC

rental figure accounted for $3000 of rent from a fishing club's

use of the property, that was collected by R&GC and remitted to

Bernard, whereas under the WHFC lease, the fishing club paid

Bernard directly. In addition, Robert claimed that the remaining

differential reflected WHFC's assumption of repair costs for which

Bernard had previously been responsible.

 Second, WHFC's lease shifted the responsibility of

maintaining liability insurance from the lessee to Bernard,

although Robert claimed this was "a clerical error" and, in fact,

WHFC paid for the liability insurance throughout its tenancy.

Third, the R&GC lease created a "sanctuary" that club members were

prohibited from entering, which was omitted from the WHFC lease.

While Robert claimed he had no knowledge of the sanctuary provision

and asserted that Bernard "never asked that it be placed in the

. . . [l]ease[,]" Robert indicated that "[Bernard] did walk the

 4 A-3957-15T2
property with the [WHFC] club members, pointed out the boundaries

of the 'sanctuary[,]' and got the members['] commitment that no

hunting would occur therein."

 Finally, WHFC's lease provided WHFC with a right of first

refusal, which required Bernard to offer the property to WHFC

before selling it to a third party, rather than a renewal option

as reflected in the R&GC lease. The right of first refusal

provision stated:

 Landlord herein grants Tenant a right of first
 refusal pursuant to which Tenant shall have
 the right to purchase the Premises or any
 portion thereof to be sold by Landlord on the
 same terms and conditions as evidenced by a
 bona fide arm[']s length contract between
 Landlord and a prospective purchaser. This
 right of first refusal shall become null and
 void unless exercised in writing by Tenant,
 certified mail, return receipt requested,
 within thirty (30) days of written notice of
 the purchase offer the terms and conditions
 of, and Landlord's intention to convey
 pursuant thereto.

 Robert conceded at his deposition that he obtained the right

of first refusal so that WHFC could use it "as leverage maybe to

get a . . . renewal[.]" Robert also admitted he "tactical[ly]

withheld from [Bernard] that members of WHFC sought a renewal

clause due to their concern that [Bernard] might 'arbitrarily'

terminate the lease." In his deposition testimony, Robert admitted

deceiving Bernard, stating:

 5 A-3957-15T2
 I was not going to tell [Bernard that the
 lessee sought a lease with a five-year
 renewal], even though I was [Bernard's] agent,
 in my view that's what I was in this deal, his
 agent, but you . . . have to be a little
 tactical about this. I wasn't going to tell
 [Bernard that WHFC] think[s] that you were
 arbitrary in throwing [the former lessee] off
 and they don't want to be in that position.

 So instead of telling [Bernard] that, I
 said [Bernard], you know, you're in your 80's,
 this is a five-year lease, you're agreeing to
 a five-year lease. Well you're telling me
 that if they're good tenants, you're going to
 renew, and that's what he kept telling me,
 don't worry about it, [Robert], you know,
 they're good tenants, I'm going to renew, why
 would I not renew.

 And my answer was, well, they would tell
 me, [Robert], we're not happy with that
 because he didn't do that with the prior guys,
 he threw them off, so we want something more.

 So [Bernard] finally said to me, I'm not
 going to give them a five-year renewal, but
 if you're concerned about the fact that I'm
 an old fart and I might not be here to renew
 at the end of five years, . . . if you think
 . . . your group is going to be dealing with
 other people, I'll give you a right of first
 refusal.

 When the lease was executed on October 3, 2011, Elryan, Inc.,

a corporation wholly-owned by Bernard,2 held title to the property.

However, Elryan was not mentioned in the lease and nothing

suggested that Bernard executed the lease in a representative

2
 Elryan's corporate charter was voided by the State on September
9, 1982 for failure to pay taxes.

 6 A-3957-15T2
capacity. Robert executed the lease in his capacity as WHFC's

vice president and later identified himself as WHFC's president

as well as Bernard's "lawyer" and "friend" in a signed letter

asserting the rights of the club members under the lease.

 In his November 19, 2015 certification, Robert conceded that

"an attorney/client relationship" was ongoing during the lease

transaction and does not dispute that he neglected to disclose his

conflict of interest in writing to Bernard prior to executing the

lease. In his deposition testimony, Robert also conceded that "at

some point in time, . . . I think I probably became [Bernard's]

attorney with regard to this lease, but not initially." Although

Robert was aware during lease negotiations that Bernard was

represented by Karen Spano on a separate matter involving the

subdivision and sale of a portion of the same property, Robert

stated he did not know if Bernard consulted with Spano regarding

the lease and Spano later confirmed in her deposition testimony

that she was not consulted.

 By March 2012, Bernard's physical and mental health had

deteriorated so precipitously that, with Robert's assistance,

Bernard executed a Power of Attorney in favor of his wife, Ethel

Handler, and her niece on March 21, 2012. According to Ethel,

Bernard "suffer[ed] from the symptoms of [d]ementia" around this

time. Bernard passed away the following year and Robert

 7 A-3957-15T2
represented Ethel and her niece after Bernard's death. At Ethel's

direction, Robert conveyed the property to Ethel on April 22,

2013, and recorded a deed effectuating the transfer on May 6,

2013. Subsequently, the lease was recorded on April 29, 2014.

Notwithstanding Bernard's passing, Robert stated that Ethel

continued to accept WHFC's rental payments.

 On June 3, 2015, Ethel entered into a contract to sell the

property to plaintiff. One of the contract provisions specified

that Ethel would immediately provide written notice of the contract

in accordance with the lease and "[i]n the event that the [t]enant

exercises its option and the [t]enant purchases the property on

the same terms, [the] contract shall be null and void." Ethel

notified WHFC of the contract by letter dated June 8, 2015. On

June 25, 2015, WHFC responded by assigning its right of first

refusal in consideration of one dollar to Walpack, a company formed

by Robert two days prior and of which Robert was the sole member.

Walpack swiftly asserted the right of first refusal against

plaintiff and tendered an offer to purchase the property from

Ethel under the same terms as plaintiff's contract.

 8 A-3957-15T2
 Plaintiff countered by filing a Verified Complaint on July

13, 2015, against Ethel,3 WHFC, Walpack and fictitiously-named John

Doe defendants, seeking to enjoin Walpack from exercising its

right of first refusal, void the assignment of the right of first

refusal, and obtain an award of attorney's fees. Finding good

cause for a preliminary injunction, the trial court restrained

Ethel from conveying the property to WHFC or Walpack pending

resolution of the matter.

 Defendants filed a contesting answer to plaintiff's complaint

and cross-claimed against Ethel, "demand[ing] judgment against

[Ethel] for specific performance conveying the [p]roperty to

[Walpack.]" Ethel answered both plaintiff's complaint and

defendants' cross-claims, urging that judgment be "entered in

favor of plaintiff allowing for specific performance of the

conveyance of the [p]roperty to [p]laintiff" and "invalidating

[defendants'] [l]ease." Ethel "denie[d] that Walpack [was]

entitled to any relief and instead demand[ed] that Walpack's

[c]rossclaims be dismissed with prejudice[.]" Ethel asserted that

"the [l]ease [was] invalid because it was entered into at a time

3
 Although Ethel is a named defendant in this case, plaintiff's
complaint primarily targeted WHFC and Walpack. Further, in the
Law Division, Ethel supported plaintiff's position. On appeal,
we entered an order on October 17, 2016, suppressing Ethel's brief
for her failure to timely file it.

 9 A-3957-15T2
when Bernard's attorney, Robert Benbrook, Esq., was acting in

violation of R.P.C. 1.8."

 In December 2015, the parties filed motions for summary

judgment.4 On December 7, 2015, the court denied both motions to

permit additional discovery. The court found that R.P.C. 1.8(a)

was violated because Robert admitted "that he and [Bernard] had

an attorney-client relationship during the lease transaction" and

Robert "signed the lease on behalf of WHFC," of which he was "a

co-founder" and "served as its president, vice president, and

legal counsel[,]" thus acquiring "a pecuniary interest adverse to

his client for the purposes of [R.P.C.] 1.8(a)." However, the

court determined that material questions of fact existed regarding

defendants' rebuttal of the presumption of invalidity. In this

regard, the court acknowledged that the presumption of invalidity

could be rebutted with "evidence showing full and complete

disclosure of all facts known to the attorney, absolute

independence of action on the part of the client, the fairness and

equity of the transaction, the lack of overreaching, and the

client's understanding of the importance of independent

representation."

4
 Ethel's filing supported summary judgment in plaintiff's favor.

 10 A-3957-15T2
 The court noted that because Robert's certification did not

address the R.P.C. 1.8(a) issues, and, at that juncture, he had

not yet been deposed, "[h]e should be given the opportunity to

testify as to what took place between himself and [Bernard]." The

court noted further that "[o]ther individuals can . . . attest to

facts relating to [Bernard's] sophistication, and Ms. Spano['s] .

. . involvement in the lease transaction." Additionally, the

court noted that because Bernard "had plenary control over the

property as its sole shareholder[,] . . . the lease [was likely]

enforceable notwithstanding its failure to name Elryan, Inc., as

a party[,]" and WHFC's assignment to Walpack was "[n]ot, by

[i]tself, [i]nvalid."

 After both sides provided additional discovery, the parties

again moved for summary judgment. On April 7, 2016, following

oral argument, the court denied defendants' summary judgment

motion, rejecting defendants' argument that plaintiff had no

standing because his contract of sale was null and void by virtue

of defendants' exercise of the right of first refusal. Reiterating

its prior ruling that Robert violated R.P.C. 1.8(a) by his own

admission, the court deferred adjudicating plaintiff's summary

judgment motion pending supplemental briefing on the consequences

of the violation.

 11 A-3957-15T2
 Thereafter, in a May 13, 2016 order and written opinion, the

court granted plaintiff's motion for summary judgment, again

denied defendants' cross-motion for summary judgment, and denied

plaintiff's application for counsel fees. The court found that

the questions of fact that formerly precluded summary judgment

were no longer at issue. The court explained that "[p]laintiff

has now presented uncontroverted evidence that [defendants']

lease, including the right of first refusal contained therein,

[was] invalid and unenforceable under [R.P.C.] 1.8(a)."

 The court reasoned that there was "uncontroverted evidence

that [Robert] both intentionally misrepresented WHFC's motivation

for seeking a renewal clause and failed to disclose a known

likelihood that WHFC may later misuse the right of first refusal

[as leverage] to obtain a lease renewal against [Bernard's] will."

The court pointed to Robert's admission that he "intentionally"

and "tactically" reinforced Bernard's "false belief" that WHFC

members sought a renewal clause out of concern that Bernard would

predecease their leasehold when, in fact, they sought a renewal

clause due to their concern that Bernard "might arbitrarily

terminate the lease." According to the court, Bernard's "false

belief," which Robert "fail[ed] to correct" but rather

"encouraged[,]" led Bernard to grant "a right of first refusal in

lieu of a renewal clause."

 12 A-3957-15T2
 The court also pointed to the fact that the WHFC members "had

not been inclined to accept the lease without a renewal clause

until [Robert] informed them that they could use the right of

first refusal as a source of leverage to later obtain the renewal

that [Bernard] refused to provide." According to the court,

"having advised WHFC to misuse the right of first refusal to wrest

additional property rights away from [Bernard]," Robert "was thus

aware that such a likelihood both existed and was within WHFC's

contemplation." The court concluded that because "[t]his fact was

material to the lease negotiations, and [Robert] failed to disclose

it to [Bernard,]" it constituted another material omission in

violation of R.P.C. 1.8(a).

 The court determined that "[t]hese omissions of material fact

[were] fatal to [defendants'] ability to rebut the presumption of

invalidity raised by [Robert's] facial violation of the Rule."

Citing Petit-Clair v. Nelson, 344 N.J. Super. 538, 542 (App. Div.

2001) and Cohen v. Radio-Electronics Officers Union, 146 N.J. 140,

156 (1996), the court concluded that, as a matter of law, Robert's

ethics violations invalidated the lease agreement and accompanying

right of first refusal. According to the court, once WHFC assigned

the right of first refusal to Walpack, of which Robert was the

sole member, application of R.P.C. 1.8(a)(1)-(3) invalidated the

assignment. As a result, the court concluded that defendants were

 13 A-3957-15T2
stripped of any interest in the property.5 Finally, the court

noted that "[n]o basis to award counsel fees was presented to the

[c]ourt and so none was awarded." This appeal and cross-appeal

followed.

 II.

 We review a ruling on a motion for summary judgment de novo,

applying the same standard governing the trial court. Templo

Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189,

199 (2016) (citation omitted). Thus, we consider, as the motion

judge did, "whether the competent evidential materials presented,

when viewed in the light most favorable to the non-moving party,

are sufficient to permit a rational factfinder to resolve the

alleged disputed issue in favor of the non-moving party." Brill,

supra, 142 N.J. at 540. If there is no genuine issue of material

fact, we must then "decide whether the trial court correctly

interpreted the law." DepoLink Court Reporting & Litig. Support

Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013)

(citation omitted). We review issues of law de novo and accord

no deference to the trial judge's legal conclusions. Nicholas v.

Mynster, 213 N.J. 463, 478 (2013). "[F]or mixed questions of law

5
 The court observed that Robert likely violated R.P.C. 1.7(a)(1)
as well, prohibiting "an attorney from representing one client
where it will be directly adverse to another client," by acting
as Bernard's counsel during the lease negotiations.

 14 A-3957-15T2
and fact, [we] give[] deference . . . to the supported factual

findings of the trial court, but review[] de novo the lower court's

application of any legal rules to such factual findings." State

v. Pierre, 223 N.J. 560, 577 (2015) (citations omitted).

 This standard compels the grant of summary judgment "if the

pleadings, depositions, answers to interrogatories and admissions

on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact challenged and that the

moving party is entitled to a judgment or order as a matter of

law." R. 4:46-2(c). "To defeat a motion for summary judgment,

the opponent must 'come forward with evidence that creates a

genuine issue of material fact.'" Cortez v. Gindhart, 435 N.J.

Super. 589, 605 (App. Div. 2014), certif. denied, 220 N.J. 269

(2015) (citation omitted). "[C]onclusory and self-serving

assertions by one of the parties are insufficient to overcome the

motion[.]" Puder v. Buechel, 183 N.J. 428, 440-41 (2005)

(citations omitted).

 Applying the above standards, we discern no reason to reverse

the grant of summary judgment to plaintiff. Defendants argue the

court erred because the facts do not support the conclusion that

the lease was a "'business transaction' within the meaning of

R.P.C. 1.8(a)" and the lease did not provide Robert "with an

ownership, possessory, security or other pecuniary interest

 15 A-3957-15T2
adverse to [Bernard]." In the alternative, defendants argue that

"[e]ven assuming R.P.C. 1.8(a) applies," the court erred in

determining that the presumption of invalidity was not overcome

"based on the specific facts of the case." We disagree.

 New Jersey's Rules of Professional Responsibility expressly

forbid "[a] lawyer [from] enter[ing] into a business transaction

with a client or knowingly acquir[ing] an ownership, possessory,

security or other pecuniary interest adverse to a client unless"

the attorney meets the following three conjunctive requirements:

 (1) the transaction and terms in which the
 lawyer acquires the interest are fair and
 reasonable to the client and are fully
 disclosed and transmitted in writing to
 the client in a manner that can be
 understood by the client;

 (2) the client is advised in writing of the
 desirability of seeking and is given a
 reasonable opportunity to seek the advice
 of independent legal counsel of the
 client's choice concerning the
 transaction; and

 (3) the client gives informed consent, in a
 writing signed by the client, to the
 essential terms of the transaction and
 the lawyer's role in the transaction,
 including whether the lawyer is
 representing the client in the
 transaction.

 [R.P.C. 1.8(a).]

 In Milo Fields Trust v. Britz, 378 N.J. Super. 137, 149 (App.

Div. 2005), we explained that "business transaction[s] between an

 16 A-3957-15T2
attorney and client [are] not prohibited" by R.P.C. 1.8(a), but

instead are deemed "presumptively invalid[.]" An attorney

overcomes this presumption of invalidity by showing: "[(1)] full

and complete disclosure of all facts known to the attorney, [(2)]

absolute independence of action on the part of the client, [(3)]

the fairness and equity of the transaction, [(4)] the lack of

overreaching, and [(5)] the client's understanding of the

importance of independent representation." Ibid. (citing P&M

Enters. v. Murray, 293 N.J. Super. 310, 314 (App. Div. 1996)).

The party seeking to affirm the transaction must prove each element

by "the clearest and most convincing evidence[.]" Murray, supra,

293 N.J. Super. at 314 (citations omitted).

 An attorney's failure to rebut the presumption typically

results in the invalidation of the transaction. Van Horn v. Van

Horn, 415 N.J. Super. 398, 415 (App. Div. 2010) (citing Milo Fields

Trust, supra, 378 N.J. Super. at 154). Although harsh, this remedy

reflects New Jersey's strong public policy against ethical

violations by attorneys. Our Supreme Court has long held "'the

primary reason for discipline is not to punish the attorney but

to protect the public against members of the bar who are unworthy

of their trust.'" In re Ort, 134 N.J. 146, 158 (1993) (quoting

In re Lunn, 118 N.J. 163, 167 (1990)).

 17 A-3957-15T2
 In these circumstances, defendants cannot overcome the

presumption of invalidity. It is undisputed that Robert was either

the vice-president or president of WHFC, which received both a

favorable lease and a strategic advantage by virtue of the right

of first refusal on Bernard's property. Further, Robert admitted

that he did not provide Bernard with written notice or full

disclosure of the transaction or inform him of the right to seek

independent counsel, knowing that Bernard had another attorney at

the time who represented him in connection with an unrelated matter

involving the same property. Because defendants cannot satisfy

the exemption from R.P.C. 1.8(a)'s presumptive bar, the lease and

right of first refusal are invalid. That said, equally unavailing

is defendants' challenge to plaintiff's "standing to enforce [the

purchase contract[,]" predicated on the argument that plaintiff's

"[c]ontract is void" because it is "conditioned upon [WHFC] not

exercising its right of first refusal[.]"

 In his cross appeal, plaintiff seeks reimbursement of his

attorney's fees, arguing that this court's holding in Innes v.

Marzano-Lesnevich, 435 N.J. Super. 198 (App. Div. 2014), aff'd in

part and modified in part, 224 N.J. 584 (2016), allows a non-

client third party to recover attorney's fees from a lawyer as a

result of the lawyer's ethical violation if the lawyer owed an

independent duty to that third party. Although plaintiff sought

 18 A-3957-15T2
an award of attorney's fees in his complaint, in granting summary

judgment to plaintiff, the court denied awarding attorney's fees

noting "[n]o basis to award counsel fees was presented to the

[c]ourt[.]" This court "'will decline to consider questions or

issues not properly presented to the trial court when an

opportunity for such a presentation is available unless the

questions so raised on appeal go to the jurisdiction of the trial

court or concern matters of great public interest.'" Zaman v.

Felton, 219 N.J. 199, 226-27 (2014) (quoting State v. Robinson,

200 N.J. 1, 20 (2009)). Plaintiff did not properly present this

issue to the trial court and it is not jurisdictional in nature

nor does it substantially implicate the public interest.

 Nonetheless, "[i]n the field of civil litigation, New Jersey

courts historically follow the 'American Rule,' which provides

that litigants must bear the cost of their own attorneys' fees."

Innes v. Marzano-Lesnevich, 224 N.J. 584, 592 (2016) (citing Litton

Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 404 (2009)).

"'[T]he purposes behind the American Rule are threefold: (1)

unrestricted access to the courts for all persons; (2) ensuring

equity by not penalizing persons for exercising their right to

litigate a dispute, even if they should lose; and (3)

administrative convenience.'" Ibid. (quoting In re Niles Trust,

176 N.J. 282, 294 (2003)). There are, however, "'exceptions to

 19 A-3957-15T2
the American Rule that are not otherwise reflected in the text of

Rule 4:42-9' and that are not provided for via statute, court

rule, or contract[,]" involving "fiduciary breaches in certain

settings." In re Estate of Folcher, 224 N.J. 496, 507 (2016)

(citations omitted).

 In Innes, our Supreme Court held that "a prevailing

beneficiary may be awarded counsel fees incurred to recover damages

arising from an attorney's intentional violation of a fiduciary

duty." Innes, supra, 224 N.J. at 598. There, the plaintiff sued

his wife's attorney for intentionally violating her fiduciary

obligation to the plaintiff when the attorney released plaintiff's

child's passport to his wife without plaintiff's permission. Id.

at 586. The Court explicitly described the Innes attorney as a

fiduciary "holding [the child's] United States passport as

trustees and escrow agents . . . for the benefit of [plaintiff]

and [his wife]." Id. at 598. Here, the Innes exception does not

apply because plaintiff is not a beneficiary of Bernard's

relationship with Robert, but rather a third party who contracted

with Ethel to purchase the property from her. Robert therefore

violated no duty to plaintiff.

 Affirmed.

 20 A-3957-15T2