**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2890-16T1

RICHARD NOBIS and
CHRISTINA NOBIS,

      Plaintiffs,

v.

STEVEN BELMONTE and
DWYONIA BELMONTE,

      Defendants-Appellants,

and

WILLIAM V. LANE, JOHNSTONE,
SKOK, LAUGHLIN & LANE,
MATTHEW TAL, HOSPITALITY
SOLUTIONS REALTY SERVICES,
LLC, HOSPITALITY SOLUTIONS,
LLC, HOSPITALITY SOLUTIONS
WORLDWIDE, LLC, RE/MAX
FIRST CHOICE REALTORS,
and PATRICIA DiGERONIMO,

      Defendants,
and

LAURIE BOGAARD,

Defendant-Respondent.

Argued September 20, 2018 – Decided December 13, 2018

Before Judges Alvarez and Nugent.

On appeal from Superior Court of New Jersey, Law Division, Union County, Docket No. L-3595-14.

Anthony M. Bedwell argued the cause for appellants (Jardim, Meisner & Susser, PC, and Bedwell & Pyrich, LLC, attorneys; Anthony M. Bedwell, of counsel and on the briefs).

Gregg S. Kahn argued the cause for respondents Laurie Bogaard and Bogaard & Associates, LLC (Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, attorneys; Gregg S. Kahn, of counsel and on the brief; John P. O'Toole, on the brief).

PER CURIAM

Defendants Steven Belmonte and Dwyonia Belmonte appeal the February 1, 2017 grant of partial summary judgment to defendants Bogaard & Associates, LLC, and Laurie Bogaard, Esquire, (Bogaard) dismissing the Belmonte's crossclaim for legal malpractice. For the reasons that follow, we affirm.

In January 2011, the Belmontes entered into an agreement to sell their home to plaintiffs Richard and Christina Nobis.[1] The agreement was contingent

---

[1] The plaintiffs and the Belmonte defendants will be referred to by their first names where necessary to avoid confusion.

upon the Nobises obtaining a satisfactory home inspection. The home inspection report noted that the attic space above the garage had been painted white, and that a fan had been installed in the den. Concerned that those two circumstances might indicate a mold problem, the inspector suggested follow-up.

On February 10, 2011, the Nobises' attorney, Bogaard, sent the Belmonte's attorney, William Lane, a copy of the report. At the end of the letter, Bogaard asked for an explanation of the painting in the attic and the fan in the den. Lane responded, stating that "what the purchaser has seen is self-explanatory." He made no mention of any mold problem.

On February 22, 2011, Bogaard inquired about possible mold conditions, stating:

> My clients still have concern over the issue as to why the attic was painted white. Please advise if the sellers have ever experienced any type of mold or other issues in the attic and if so, how same was remediated.

Lane responded on February 23, 2011:

> My clients have never experienced a mold problem in the attic. The attic was painted white, assumably because that was a personal preference. However, as a result of an overflowed toilet during a short term tenancy, there was the appearance of a small amount of mold in the garage and in a small area in the basement. My clients engaged a licensed certified mold

3

remediation company who tested the entire house and then remediated the affected area. That remediation came with a warranty (see copy attached), which remains in full force and effect.

No copy of the warranty was attached, however.

On February 24, 2011, Bogaard again wrote to Lane: "[a]fter speaking with my clients, the purchasers find the sellers' response to their concerns acceptable, with exception to the pool." When deposed, Richard acknowledged that he had a conversation with Steven around February 24, 2011, during which Steven mentioned the word "mold," and acknowledged the presence of a small amount of mold in the basement. During depositions, the Nobises disputed the extent of the information they had been provided regarding the source and treatment of the mold, and their receipt of relevant documents. Richard also said that Steven assured him during the call that the amount of mold in the garage was small but that mold spores travel. Both Nobises insisted the first time they actually learned about the existence of the mold was two days prior to closing when informed by Steven, and that he assured them that the problem had been addressed. The Nobises assumed the mold report and the warranty would be produced at closing, which took place on March 1, 2011. They were not given the documents at that time.

A-2890-16T1

When deposed, Lane claimed that he heard Bogaard advise the Nobises at closing that they had remedies beyond the closing if the mold remediation documents were not provided. That fall, the Nobises filed suit against their attorney, the attorney's firm, and the Belmontes. That triggered the Belmontes' third-party complaint against the Bogaard defendants alleging legal malpractice and seeking attorney's fees and costs.

The Belmontes contend that Bogaard owed them a duty of care arising from Bogaard's representation of the Nobises. Furthermore, they allege that Bogaard told the Belmontes that she had discussed the mold condition and the warranty with the Nobises, that the information was acceptable, and that they went through with the sale relying on the assurance.

In the February 1, 2017 written order, the trial court said:

> Buyer's attorney does not breach a duty to seller for failing to represent Buyer properly. Petrillo v. Bachenberg[2] is not applicable, as it addresses duty of Seller's attorney to a Buyer whom Seller's attorney knows will rely on his misrepresentations. Reasons to be set forth more fully on the record at 3 p.m. on Feb. 2, 2017.

On February 2, 2017, the trial judge granted the Bogaard defendants' motion for summary judgment. She concluded as a matter of law that the

---

[2] 139 N.J. 472 (1995).

Belmontes, who were non-clients, could not assert a legal malpractice claim against the Bogaard defendants because they failed to establish that the Bogaard defendants owed any sort of duty to them.

On February 2, 2017, the court explained:

> If Bogaard told the Belmontes that she discussed the mold problem and didn't, I still don't see how this gives the Belmontes a cause of action against Bogaard. It may well give . . . the Nobises a cause of action for breach of their own attorneys' duties, but not the sellers, who, of course, it should be noted, were represented by counsel themselves, and everything, basically, flowed through Mr. Lane or in some circumstances there are allegations that Mr. No[b]is – or Mr. Belmonte himself made some statements.
>
> So Petrillo says that under some circumstances . . . an attorney assumes a duty to a non-client, which is what the Belmontes want here, to provide reliable information. That is not the situation we have . . . .
>
> [T]he buyer's claim is, in large part, against their own lawyer, who failed to do her job. But . . . for the sellers to say, yes, and now we're in this lawsuit because . . . that buyer's attorney didn't do her job, I think there's no basis for a cause of action on that.
>
> There's no duty between the – between the two, and certainly it's not the type of situation – if –if I permitted that, we would basically be making every adversary's or other party to an action's attorney liable to the party they're not representing.
>
> This is too broad a rule, and – and I don't think Petrillo makes that rule. . . . Petrillo says in some

6

circumstances, if you expect that a buyer is going to rely on the seller's attorney's representations, and the buyer is harmed, then the buyer will have a – a cause of action. But under any facts that are alleged by either side here, I don't see where the <u>Belmontes</u> get a cause of action against the <u>Bogaard</u> defendants.

In dismissing the Belmontes' claim for attorneys' fees and expenses, the trial court added:

> We've talked about <u>Innes verses Marzano-Lesnovich</u>, which is the most recent – recent statement at 224 <u>N.J.</u> 584 [(2016)] talking about the fiduciary duty that arises as an escrow agent in that case, although these people happened to be a – attorneys for one of the parties.
>
> . . . .
>
> [T]here is no case that says a non-client can get attorney's fees in an action. . . .
>
> [A]s the Court noted in <u>Innes</u>, departures from the American Rule are the exception. We have awarded counsel fees to a prevailing plaintiff in a legal malpractice action premised upon professional negligence because of the unique nature of the attorney/client relationship. Not the unique nature of the fiduciary relationship – the unique nature of the attorney/client relationship. And certainly, the Belmontes can look to their lawyer, and the Nobises can look to their lawyer for those damages.
>
> But now we are in a situation where they're looking to the other party's lawyer, when they do not have the unique attorney/client relationship. So – and the Court goes on to say [in <u>Innes</u>,] we have never held that a non-

client is entitled to a fee-shifting award for an attorney's negligence.

. . . .

There's – there's not authority for finding an attorney/client relationship. There . . . could be a finding that a – fiduciary obligation was breached, but that does not necessarily . . . flow from there that the attorney/client relationship allowing the recoupment of attorney's fees would be permissible. And I note that everybody's attorney is already in this case.

Prior to trial, scheduled for February 6, 2017, all of the claims were dismissed except for the Nobises' and the Belmontes' claim against Bogaard. Before trial commenced, the Nobises settled their claims against Bogaard.

Now on appeal, the Belmontes allege the following points of error:

POINT I
THE TRIAL COURT ERRED IN GRANTING THE BOGAARD DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST THE BELMONTES BECAUSE (A) THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY HOLDING THAT AS A MATTER OF LAW A SELLER OF REAL ESTATE CANNOT MAINTAIN A CAUSE OF ACTION FOR PROFESSIONAL NEGLIGENCE AGAINST THE BUYER'S ATTORNEY AND (B) MATERIAL DISPUTED FACTS TAKEN IN A LIGHT MOST FAVORABLE TO THE BELMONTES PROHIBIT GRANTING SUMMARY JUDGMENT.

A.   THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY HOLDING THAT AS A MATTER OF LAW A SELLER OF REAL

A-2890-16T1

PROPERTY CANNOT MAINTAIN A CAUSE OF ACTION FOR PROFESSIONAL NEGLIGENCE AGAINST THE REAL ESTATE BUYER'S ATTORNEY.

B.   MATERIAL DISPUTED FACTS TAKEN IN A LIGHT MOST FAVORABLE TO THE BELMONTES PROHIBIT GRANTING SUMMARY JUDGMENT BECAUSE THOSE FACTS TAKEN IN A LIGHT MOST FAVORABLE TO THE NON-MOVING PARTY PROVIDE SUFFICIENT FACTS TO CONCLUDE THAT THE BOGAARD RESPONDENTS BREACHED THEIR DUTY OF CARE OWED TO THE BELMONTES AND THAT THE BOGAARD'S BREACH OF DUTY PROXIMATELY CAUSED DAMAGES TO THE BELMONTES.

POINT II
THE TRIAL COURT ERRED BY GRANTING THE BOGAARD DEFENDANTS' PARTIAL SUMMARY JUDGMENT DISMISSING THE BELMONTE'S CLAIM FOR RECOVERY OF FEES AND COSTS INCURRED IN PROSECUTING THE CLAIMS AGAINST THE BOGAARD DEFENDANTS.

I.

We review summary judgment decisions de novo, applying the same standard used by the trial court. Rowe v. Mazel Thirty, LLC, 209 N.J. 35, 41 (2012) (citing Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010)). Summary judgment is properly granted when no genuine issue of material fact exists, considering the evidence in the light most favorable to the non-moving

9

party, and the moving party is entitled to prevail as a matter of law. Ibid. (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529 (1995)); R. 4:46-2(c). Any issue of material fact has to be "genuine." Brill, 142 N.J. at 529. "[Q]uestions of law [are] particularly suited for summary judgment." Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 555 (2015) (citation omitted). Such is the case in this appeal.

In order to succeed on a legal malpractice claim, the proponents must establish: (1) the existence of an attorney-client relationship that creates a duty of care upon the attorney; (2) a breach of that duty; (3) proximate causation of the damages claimed by the plaintiff; and (4) actual damages. See Cortez v. Gindhart, 435 N.J. Super. 589, 598 (App. Div. 2014); see also Sommers v. McKinney, 287 N.J. Super. 1, 9-10 (App. Div. 1996).

Not surprisingly, where no attorney-client relationship exists, the standard is considerably more stringent. The duty owed by counsel to a non-client requires close scrutiny—"balancing the attorney's duty to represent clients vigorously, [RPC 1.3], with the duty not to provide misleading information on which third parties foreseeably will rely, [RPC 4.1]." Petrillo, 139 N.J. at 479.

In Petrillo, the Supreme Court recognized that "[t]he determination of the existence of a duty is a question of law for the court." Id. at 479. Furthermore,

A-2890-16T1

"attorneys may owe a duty of care to non-clients when the attorneys know, or should know, that non-clients will rely on the attorneys['] representations and the non-clients are not too remote from the attorneys to be entitled to protection." Id. at 483-84.

Nonetheless, the nature of the relationship between the attorney and the non-client is critical to the determination. Banco Popular N. Am. v. Gandi, 184 N.J. 161, 180 (2005). "[I]f the attorney does absolutely nothing to induce reasonable reliance by a third party, there is no relationship to substitute for the privity requirement." Ibid. As the Court phrased it, "the invitation to rely and reliance are the linchpins of attorney liability to third parties." Id. at 180-81. Indeed, in determining the nature of privity between third parties and an attorney, the latter's duty is limited to those situations in which the attorney intended or should have foreseen that the third party would rely on the lawyer's work. Petrillo 139 N.J. at 482. The attorney must have withheld information or made outright misrepresentations knowing that the non-client will rely on the information. Ibid.

In this case, the Belmontes were represented by their own attorney. Communications regarding the upcoming closing took place between counsel, not between the Bogaard defendants and the sellers. From this record, it seems

11

clear that other than seeing Bogaard's letters to Lane, there was no direct communication between the Bogaard defendants and the sellers. The Belmontes did not even attend the closing. In fact, when Steven spoke to the Nobises on the phone, he attempted to reassure them about the mold problem, about which his own attorney had initially claimed no knowledge.

To state that no duty of care existed between the Bogaard defendants and the Belmontes under these circumstances is to state the obvious. The Belmontes claim that the Bogaard defendants misrepresented to the Belmontes' attorney that Bogaard had discussed the mold condition and the related warranty with the Nobises, and that it was acceptable to them. This mischaracterizes the record. No mention of the mold was made in Bogaard's February 24, 2011 letter. Bogaard was merely attempting to update the Belmontes' attorney as to the status of the sale. Nothing in that letter indicated she had discussed the mold condition or the warranty with the Nobises.

As we have said, Lane initially denied knowledge of any mold problem. When on February 28, 2011, Bogaard wrote again requesting all the paperwork regarding mold remediation along with a copy of the warranty, nothing was forthcoming before or at the closing. Bogaard did not know the extent of the mold condition, nor did she make any representations on which the Belmontes

relied. The record presented to the judge who decided the motion for summary judgment did not include any genuine disputes of material fact. The Bogaard defendants were not party to the telephone conference during which Steven appeared to have minimized, at least according to the Nobises, the extent of the mold condition.

The judge did not err by granting the motion. To have done otherwise would have distorted the meaning of Petrillo. That case simply did not make attorneys liable to third parties represented by their own counsel for any alleged malpractice in circumstances such as these.

## II.

The Belmontes also challenge the award of summary judgment on their request for counsel fees, based on Saffer v. Willoughby, 143 N.J. 256, 271 (1996). However, as the Supreme Court pronounced in Innes, attorney's fees and costs are not recoverable by a non-client against a lawyer in a negligence case. See Innes v. Marzano-Lesnevich, 224 N.J. 584, 597 (2016). The Innes Court reiterated that departures from the American rule are the exception, and that a non-client is not entitled to a fee-shifting award for an attorney's alleged negligence. Ibid.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-2890-16T1