# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1799-21
              A-3484-22

R.S.,

      Plaintiff-Respondent,

v.

C.V.,

      Defendant-Appellant.

_____

C.V.,

      Plaintiff-Respondent,

v.

R.S.,

      Defendant-Appellant.

_____

        Submitted February 13, 2025 – Decided February 24, 2025

        Before Judges Natali and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket Nos. FV-20-1113-20 and FM-20-1136-20.

C.V., appellant pro se in A-1799-21 and respondent in A-3484-22.

R.S., respondent pro se in A-1799-21 and appellant in A-3484-22.

PER CURIAM

These appeals, calendared back-to-back and consolidated for purposes of this opinion, have their genesis in the parties' volatile relationship and contentious divorce. In A-1799-21, C.V.[1] challenges the court's January 25, 2022 order that denied his application for frivolous litigation sanctions under Rule 1:4-8 and N.J.S.A. 2A:15-59.1, related to his former wife's, R.S.'s, unsuccessful request for a final restraining order (FRO) under the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to - 35 (PDVA). In A-3484-22, R.S. appeals from the court's May 24, 2023 order that denied her application to reconsider a provision of the parties' February 2, 2023 Dual Final Judgment of Divorce (DFJOD), in which the court directed the parties' minor child's passport and Overseas Citizen of India (OCI) card to "remain in the custody of [C.V.'s] attorney . . . pending further [o]rder of the [c]ourt."

---

[1] We use initials to protect the privacy of the parties. R. 1:38-3(d)(10).

For the reasons that follow, we affirm the court's January 25 order because we are convinced the court did not abuse its discretion in denying C.V.'s fee application. We similarly affirm the May 24 order as we are satisfied the court properly exercised its equitable powers by entrusting the child's travel documents to C.V.'s counsel.

A-1799-21

R.S. filed for and was granted a temporary restraining order (TRO) against C.V. on February 24, 2020. After a sixteen-day trial, on July 27, 2021, the court dissolved the TRO and denied R.S.'s application for a FRO. The court explained its decision in an oral opinion and concluded R.S. failed to establish either prong of the two-part test detailed in Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006), to warrant issuance of a FRO.

Despite denying R.S.'s application, the court nevertheless noted the parties' history was "troubling" and R.S.'s allegations "very serious." The court also observed that R.S. "candidly, sincerely, and honestly testified that she felt controlled by [C.V.] and his family" and expressed sympathy toward her. Conversely, the court called C.V.'s behavior "conniving," often adding that it was "mean" and "nasty."

3

On August 16, 2021, C.V. moved for frivolous litigation sanctions in the form of fees and costs, totaling over $120,000. The court issued an order denying the motion and explained its reasons for denying C.V.'s application in a twenty-three-page written opinion. In denying C.V.'s application, the court thoroughly addressed the parties' factual allegations, correctly cited and relied on the applicable legal principles and concluded R.S.'s applications for relief under the PDVA were not made "for the purpose of harassment, delay, or malicious injury," but rather were "filed in good faith." The court relied on M.W. v. R.L., 286 N.J. Super. 408, 411 (App. Div. 1995), and explained awarding fees was unwarranted based on trial proofs as it would facilitate another "intimidating," "mean and conniving act" by C.V.

Before us, C.V. argues that the trial court erred in denying frivolous litigation sanctions because the proofs from the FRO proceeding affirmatively established R.S.'s allegations were untrue and made only to secure an advantage in the pending divorce proceedings. He emphasizes sanctions are appropriate in domestic violence actions, like here, that are filed "in bad faith[ and] based on . . . perjured testimony." He further asserts this "is [a] case where [he] was found innocent . . . because of the . . . compelling and substantial evidence . . . and the extreme extent of the frivolous nature of the allegations in the TRO."

4

A-1799-21

We reject all of C.V.'s arguments and affirm for the reasons expressed by the court in its comprehensive and thorough written decision. We provide the following comments to amplify our decision.

"[A] reviewing court will disturb a trial court's award of counsel fees 'only on the rarest of occasions, and then only because of a clear abuse of discretion.'" Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009) (quoting Packard-Bamberger & Co., Inc. v. Collier, 167 N.J. 427, 444 (2001)); see also, e.g., McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 498 (App. Div. 2011) (decision to award attorney's fees as sanction for frivolous litigation reviewed for abuse of discretion); Wolosky v. Fredon Twp., 472 N.J. Super. 315, 327 (App. Div. 2022) (same). "An abuse of discretion 'arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis,'" or "when the discretionary act was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amount[ed] to a clear error in judgment." Borough of Englewood Cliffs v. Trautner, 478 N.J. Super. 426, 437 (App. Div. 2024) (alteration in original) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002), and Ferolito v. Park Hill Ass'n, 408 N.J. Super. 401, 407 (App. Div. 2009)). Further, a family court's factual findings are

entitled to particular deference in light of their "special jurisdiction and expertise in family matters," and should not be overturned so long as they are "supported by adequate, substantial, credible evidence." Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)).

New Jersey courts generally follow the "American Rule," requiring each litigant to bear their own costs regardless of who prevails. Innes v. Marzano-Lesnevich, 224 N.J. 584, 592 (2016). However, in appropriate cases fees are permitted for frivolous litigation under Rule 1:4-8 and N.J.S.A. 2A:15-59.1. See United Hearts, L.L.C. v. Zahabian, 407 N.J. Super. 379, 389 (App. Div. 2009). Under Rule 1:4-8, "[a] claim will be deemed frivolous or groundless when no rational argument can be advanced in its support, when it is not supported by any credible evidence, when a reasonable person could not have expected its success, or when it is completely untenable." Belfer v. Merling, 322 N.J. Super. 124, 144 (App. Div. 1999).

However, even "[f]alse allegations of fact will not justify a fee award unless they are made in bad faith, for the purpose of harassment, delay, or malicious injury." Ibid. "When the plaintiff's conduct bespeaks an honest attempt to press a perceived, though ill-founded and perhaps misguided, claim, [they] should not be found to have acted in bad faith." Id. at 144-45. Put another

6 A-1799-21

way, "[s]anctions for frivolous litigation are not imposed because a party is wrong about the law and loses [their] case." Tagayun v. AmeriChoice of N.J., Inc., 446 N.J. Super. 570, 580 (App. Div. 2016); see also M.W., 286 N.J. at 411 (explaining "in enacting the Domestic Violence Act, the Legislature only made provision for counsel fees for victims, and not for prevailing parties" in order to "avoid a chilling effect on the willingness of domestic violence victims to come forward with their complaints"). Additionally, the burden of proof rests with the party seeking sanctions. Ferolito, 408 N.J. Super. at 408.

Applying the aforementioned principles, we are satisfied the court did not abuse its considerable discretion when denying C.V.'s request for frivolous litigation sanctions. When it denied R.S.'s application for an FRO it noted her application was not meritless. On this point, the court recounted the trial evidence to support its finding C.V. was "'conniving' and [his] 'nasty' behavior[] . . . closely resembled domestic violence." It likewise underscored that C.V.'s actions were "mean" and "not model behavior," explaining that "the mere fact that the [c]ourt did not find that [C.V.] committed domestic violence" did not render the action frivolous. The court recalled recognizing at the time of trial that R.S. "had reason to file" the application in the face of behavior that "closely resembled the legal definition of domestic violence." Only the court's sensitive

assessment of credibility over the course of the sixteen-day trial led it to conclude that R.S. had not met her burden under <u>Silver</u>.

In sum, the court's conclusion that R.S. had a viable, good-faith claim was supported by the record. Because the court applied the law properly, based its findings on evidence in the record, and adequately explained its reasoning, we are convinced it properly exercised its discretion in denying C.V.'s motion for frivolous litigation sanctions.

<u>A-3484-22</u>

We next address R.S.'s challenge to the May 24, 2023 order in which she contends the judge improperly ceded responsibility for retaining and distributing the child's travel documents to C.V.'s counsel. In sum, R.S. argues a proper review of the record establishes that C.V.'s counsel conspired with him to seize the documents in 2019, making his counsel an unsuitable custodian. Instead, she argues the court should have entrusted the travel documents with a neutral party.

In July 2016, the parties entered into a marriage arranged by their families. At the time the marriage was arranged, C.V. was living in the United States and R.S. lived and worked in Singapore. The two met only once before the

ceremony, which took place in India. After R.S. obtained a visa, the parties settled in New Jersey. In September of 2017, the couple's only child was born.

On December 7, 2019, C.V. moved out of the marital home. R.S. testified that, before he left, C.V. attempted to unilaterally take both the child's and his travel documents. According to R.S., C.V. had left unilaterally before, departing with their child when he was only a month old and was absent for a week. As a result, R.S. believed C.V. was attempting to kidnap their son and called the police.

On February 23, 2020, the day R.S. was served with the divorce complaint, the child was at C.V.'s new apartment. R.S. reported that, based on conversation with C.V.'s family, she was worried he would take their son and fly to India. In response, R.S. again called the police and asserted that C.V. had kidnapped their son.

Although the police conducted a welfare check, they took no action until the following day. On February 24, 2020, R.S. obtained a TRO against C.V., the resolution of which we previously addressed in our discussion of A-1799-21. The TRO, as later modified by the court, materially limited C.V.'s parenting time with his son. C.V. was served with the restraining order that night, at which point police took the child from his custody. According to C.V., he next saw

the child around March 11, 2020, after he was "granted alternate weekends visitation."

On March 26, 2020, the court issued a tentative disposition proposing pendente lite relief in the divorce action. As relevant to this appeal, the court proposed that neither party be permitted to "leave the jurisdiction with the minor child without further [o]rder of the [c]ourt or consent of the other party." Additionally, the court noted that it would "not be practical" for the court to hold the child's passport during the height of the COVID-19 emergency and directed that R.S.'s counsel hold the document in escrow.

In December 2021, in the divorce action, the court issued further interim relief. At that point, R.S. was self-represented. Therefore, the court ordered that the child's passport be transferred from escrow with R.S.'s previous firm, to her successor counsel as soon as they were retained. The court also appointed a parenting coordinator.

While the parties were able to settle the financial aspect of the divorce, they proceeded to a three-day trial on the custody and parenting time issues. Relevant to this appeal, C.V. claimed that in July 2019, R.S. had taken the travel documents from their "common document bag" without telling him. He also alleged that after R.S. and their son returned from a trip to India in December

10

2019, she refused to show him their son's passport, instead hiding it in a laundry bag instead and threatening to call the police when he found it.

R.S. told a different story, alleging that on that day, C.V. tried to take their son and his travel documents. Additionally, R.S. noted while the court had ordered her to surrender the son's passport to her former attorney to be kept in trust, it failed to order the same for the OCI card. She testified that C.V. had therefore kept the card and still had it at the time of trial. R.S. suggested that both documents be given to the parenting coordinator as a neutral party.

On February 2, 2023, the court issued a DFJOD. Among other provisions, the court ordered that the child "not be removed from the United States absent written agreement between the parties or further [o]rder of this [c]ourt," but it did not specify where his travel documents should be kept.

Later that month, R.S.'s new attorney wrote a letter to the court. It purportedly responded to a letter from C.V.'s attorney that has not been made part of the record on appeal. The letter apparently addressed several issues regarding parenting time, child support, and their son's travel documents. Regarding the travel documents issue, counsel informed the court that he had reached out to C.V.'s counsel to propose that the newly appointed parenting coordinator take possession of them but received no response. Counsel,

11

however, urged the court not to decide the issues because there were no formal motions pending and the court lacked the information necessary to decide the issues presented.

R.S. subsequently filed a formal motion for reconsideration of the DFJOD, requesting, among other relief, corrections and clarifications of certain parenting time issues and an order requiring the son's passport and OCI card to be deposited with the parenting coordinator. She expressed significant concerns about either parent having access to the documents, unmediated by a neutral party. In March of 2023, C.V. cross-moved seeking, in part, an order that the son's travel documents be "released by [R.S.'s former counsel] to [C.V.]'s counsel," to be "kept in escrow . . . not to be released to either party without a court order." C.V. also proposed that he be allowed to obtain the documents for the purpose of renewing them, and that R.S. be ordered to cooperate in such renewal.

On May 24, 2023, the court ordered that the child's "passport shall be released by [R.S.'s former counsel], and [C.V.]'s attorney . . . shall keep the child's passport until further [o]rder." While the order did not mention the OCI card, the accompanying statement of reasons clarified that both documents would be held by C.V.'s counsel. The court also directed that the parties

"cooperate and sign all necessary documents in order for [C.V.] to renew the child's passport and OCI Card." As noted, R.S. argues that the court erred in directing C.V.'s attorney to take possession of their son's travel documents.[2] We are unconvinced.

The Family Part "is a court of equity, meaning a court of fairness." Kakstys v. Stevens, 442 N.J. Super. 501, 506 (App. Div. 2015). As such, it is vested with "inherent equitable authority to fashion appropriate remedies." Div. of Youth & Fam. Servs. v. M.W., 398 N.J. Super. 266, 295 (App. Div. 2008). We overturn an equitable remedy only in the event of an "abuse of discretion, or where the judge's conclusions prove inconsistent with [their] own findings of fact." Tarta Luna Props., LLC v. Harvest Rest. Grp. LLC, 466 N.J. Super. 137, 153 (App. Div. 2021).

We find no basis in the record to disturb the court's equitable decision to entrust the travel documents to C.V.'s counsel. We are satisfied that the Family Part judge who issued the order, and who also tried the matrimonial action, and

---

[2] R.S.'s merits brief also raises alleged deficiencies pertaining to unrelated portions of the court's orders but specifically disclaims any desire to modify those portions. Because there is no point in controversy, nor any relief that this court may grant, we do not discuss these points further. See De Vesa v. Dorsey, 134 N.J. 420, 428 (1993) (explaining that an appellate court "normally will not entertain cases when a controversy no longer exists").

A-1799-21

was fully aware of the facts and acrimony between the parties, properly exercised his equitable powers when he appointed C.V.'s attorney, an officer of the court, as custodian of the child's travel documents, and directed those documents to remain in counsel's custody "pending further [o]rder of the [c]ourt."

To the extent we have not addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in A-1799-21 and affirmed in A-3484-22.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION